Charles C. **ALDRIDGE** and Ernestine D. Aldridge, h/w

v.

**LUDWIG–HONOLD MANUFACTURING COMPANY** et al.

Civ. A. No. 73–2421.

United States District Court, E. D. Pennsylvania.

Nov. 8, 1974.

James Henry Gorbey, Jr., Media, Pa., for plaintiffs.

Henry A. Stein, Philadtlphia, Pa., (Ludwig), Richard H. Markowitz, Philadelphia, Pa. (Union), for defendants.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

The plaintiffs, Charles Aldridge and his wife, have sued the husband's employer, Ludwig-Honold Manufacturing Co., for allegedly breaching the collective bargaining agreement under which plaintiff worked by laying plaintiff off without offering him the opportunity to accept a demotion, by allowing him to remain laid off while work was available, and by rehiring him at an inferior grade. Plaintiffs have also sued the local and international unions to which Charles Aldridge belonged, asserting that the unions breached their duty to fairly represent him by failing to carry plaintiff's grievance into arbitration. All defendants have moved for summary judgment on the basis that plaintiff failed to exhaust his internal union remedies, thus depriving this Court of jurisdiction under 29 U.S.C. § 185. For the reasons discussed below we agree with defendants' position and enter judgment in their favor.

*Facts*

The following facts are set forth in the depositions and the affidavits attached to the parties' briefs.

On July 7, 1972, the day on which he was laid off, plaintiff Aldridge was an experienced tool and die inspector, with more seniority than any other of Ludwig-Honold's employees in a similar job classification. He was told by a Vice-President of the company that he was being laid-off and that he would not be permitted to "bump down" to a lower labor grade since, according to the company official, plaintiff was not qualified to do the lower grade work. Insisting on his right to remain at work in a lower grade, plaintiff called in the acting union shop chairman, Robert Madison. According to plaintiff's deposition, plaintiff asked Madison to contact the union shop chairman, John Wright, for advice and Madison did so, reporting that Wright stated that "you [plaintiff] just as well take the layoff now because they

[the company] will get you later anyhow." (Madison denies that plaintiff asked him to contact Wright, and Wright denies being contacted or making such a statement). At this point plaintiff, purportedly acting on the advice of Madison and Wright, signed a layoff slip and left work.

Plaintiff was out of work for almost one year before he was informed by colleagues that there was work available at Ludwig-Honold. Plaintiff applied for work and was rehired at labor grade ten, although he was to perform the same work which he had performed before his lay-off at labor grade twelve.

Just before he recommenced work plaintiff gave John Wright, the union shop chairman, two blank grievance forms for the latter to fill out. Plaintiff testified that Wright told him it would be best to hold the grievances in reserve until they had met with the Company President. These grievances were never filled out or filed by Wright. (Wright admitted that a union representative rather than the grievant customarily fills out the grievance form, but stated that he had no idea what plaintiff wanted to grieve about). Instead plaintiff filed his own grievance on June 11, 1973, two months after he returned to work. This grievance was ultimately rejected by the Company as untimely filed and without merit, and the union refused to submit it to arbitration on the grounds that it was unlikely to be successful.

*Jurisdiction*

This suit was brought under 29 U.S.C. § 185, which permits a union member (or a union) to sue an employer for breach of a collective bargaining agreement. One of the prerequisites to such a suit is that the parties exhaust the grievance and arbitration procedures established under the bargaining agreement. However, the failure of a union member to proceed through the entire grievance gamut can be excused if the member can show that the union discriminatorily or arbitrarily refused to process his grievance. Vaca v. Sipes, 386 U.S. 171, 185, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). But the question of exhaustion does not end with an allegation of unfair representation by the union; the aggrieved employee must also show that he has appealed his local's decision not to process his grievance to higher tribunals within the international union. Brady v. Trans World Air Lines, Inc., 401 F.2d 87 (3rd Cir. 1968). In other words, a plaintiff must exhaust his internal union remedies before he can allege unfair representation, an allegation which he must substantiate before he can sue his employer for breach of the bargaining agreement.

The collective bargaining agreement between Ludwig-Honold and its employees provides that:

". . . a grievance of an employee shall first be presented orally to the employee's foreman. If the grievance is presented orally to the foreman and not satisfactorily settled, it may promptly be reduced to writing on the forms provided." Production and Maintenance Agreement between Ludwig-Honold Mfg. Co., and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) and its Local No. 416 (1969), Article XXVIII Section I. (Attached as Exhibit D–CO–1 to defendant Ludwig-Honold's Memorandum of Law in support of its Motion to Dismiss the Complaint).

The agreement further states:

"Any grievance, other than one involving discharge or disciplinary layoff . . . which is not presented for disposition through the grievance procedure described herein within five (5) working days of the occurrence of the condition which it is claimed gave rise to the grievance, shall not thereafter be presented . . ." (Article XXVIII, Section 3)

The agreement provides for three grievance stages, followed by arbitration

should the grievance procedure prove satisfactory to either the union or the employer. (However, only grievances involving the interpretation or application of the agreement's provisions are arbitrable).

As stated before, the failure to comply with these procedures does not bar an employee's suit to enforce the agreement if the employee can show that the union wrongfully failed to initiate or process his grievance. However, such a showing cannot be made unless the employee first appeals his union representative's decision not to assert his grievance within the union itself. Under the Constitution of plaintiff's International Union (Attachment #1 to defendant Unions' Motion to Dismiss the Complaint), a union member may appeal an adverse decision by the union to the "appropriate body" of his local union (in this case, the local's general membership, see affidavit of John Alexander) within sixty (60) days of the time the aggrieved member first becomes aware of the union's decision. (Constitution, Article 33, Section 2). Should his appeal to the local's members prove unsuccessful, he may appeal to the International Unions' Executive Board. (Constitution, Article 33, Section 5). Should the decision of the Executive Board be against the aggrieved, he may appeal to either the Appeal's Committee of the Constitution Convention or to the independent Public Review Board (Constitution, Article 33, Section 8).

It is undisputed that plaintiff did not present any grievance, oral or written, to his employer at the time he signed the lay-off slip. Nor is it disputed that plaintiff never appealed the union's decision not to present a grievance for him to either the local membership or any of the International's appellate tribunals. In fact, plaintiff never even approached John Wright, the shop chairman, or John Alexander, the local union President, concerning his lay-off until nine months after it occurred. As for the grievance filed by plaintiff upon his return to work in April, 1973, the union processed this grievance through all three stages but declined to submit it to arbitration. Nothing presented by plaintiff contradicts the testimony of the union officials that plaintiff never appealed the union's refusal to go to arbitration to either the local membership or the International's appellate tribunals.

Plaintiff contends that his ignorance of the grievance and internal union appeals procedures should excuse his failure to pursue either of them. In support of this contention plaintiff offers the testimony of the local union president that the men in the plant were generally unsophisticated about union matters. Plaintiff also contends that it would be unreasonable to expect him to appeal to the union when union officials had told him to accept his lay-off. Contentions identical to these were addressed and rejected by the Sixth Circuit in the case of Newgent v. Modine Manufacturing Company, 495 F.2d 919 (6 Cir. 1974). There the Court stated:

"By becoming a member of the Union [plaintiff] was contractually obligated to exhaust union remedies before resorting to a court action [citation omitted]. Necessarily implied in this obligation is the duty to become aware of the nature and availability of union remedies. [Plaintiff] was not 'justified in remaining in ignorance of the provisions governing his own union or, in fact, of relying on a statement by an officer that there was nothing he could do." Donahue v. Acme Markets, Inc., 54 L.C. para. 11, 413 (E.D.Pa.1966)." 495 F.2d at 927–928.

While it is true that an employee need not exhaust his internal union remedies if such an effort would prove futile, Price v. International Bro. of Teamsters, Chauffeurs, Etc., 46 F.R.D. 18 (E.D.Pa.1969), or where there are exceptional circumstances explaining the

failure to exhaust, Day v. United Automobile, Aero., and Agr. Imp. Wkrs. Local 36, 466 F.2d 83 (6th Cir. 1972), the present case does not appear to fit within either of these exceptions.

Where, as here, there exist internal procedures providing reasonably prompt review of adverse decisions by union levels higher than those responsible for the decisions, this Court's entertainment of an employee's suit in spite of his failure to utilize these procedures would undercut the policy of "forestall-[ing] judicial interference with the internal affairs of a labor organization until it has had at least some opportunity to resolve disputes concerning its own legitimate affairs". Brady v. Trans World Airlines, Inc., 401 F.2d at 104 (3rd Cir. 1968). Nor should a plaintiff be allowed to circumvent this policy by merely alleging, as was done here, a conspiracy between the company and the union to get rid of plaintiff. A union can breach its duty of fair representation regardless of whether it is part of a conspiracy directed at the union member to whom it owes that duty. Since an allegation of conspiracy does not diminish a union member plaintiff's burden of proof, it should not be allowed to relieve him of the jurisdictional prerequisite of exhausting his internal union remedies.

Since the facts concerning plaintiff's failure to appeal the decision not to submit his grievance to arbitration are not in dispute we must grant defendants' motions for summary judgment. While this Court may not agree with the local union's judgment that plaintiff's grievance was untimely or without merit, particularly as to his claims that the Company failed to recall him when work was available and that the Company ultimately rehired him at an inferior grade, we cannot allow this judgment to be challenged in Court before the union itself has had an opportunity to review it.