Susan J. GRIESEMER

v.

**RETAIL STORE EMPLOYEES UNION, LOCAL 1393 and Retail Clerks International Union, AFL–CIO, CLC.**

Civ. A. No. 79–1757.

United States District Court, E. D. Pennsylvania.

Jan. 10, 1980.

Richard M. Lovenwirth, Pottstown, Pa., for plaintiff.

Richard B. Sigmond, Philadelphia, Pa., Beth Shulman, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Substantially different versions accorded by the parties to the circumstances leading to institution of this action require elaboration of both positions. According to plaintiff, her employer, Food Fair, Inc. (Food Fair), discharged her without cause in September 1978. Although she used Retail Store Employees Union, Local 1393 (local union) to represent her at all stages of her grievance procedure against Food Fair,[1] she concluded that the local union did not represent her adequately for four reasons. First, the wife of the local union representative assigned to her grievance had replaced her as a front end manager, plaintiff's original position. Second, the local union representative never demanded that plaintiff be reinstated to that position. Third, plaintiff brought these facts to the attention of defendant Retail Clerks International Union (international union), which indicated through its agent that the local union representative acted properly. Finally, plaintiff did not know that the local union representative's brother was a representative to the international union. For the loss of pay resulting from her four-month suspension plaintiff demanded one million dollars in damages.[2]

The local union version varied substantially. According to this defendant, "serious allegations of dishonesty" with "curious undertones" prompted termination of plaintiff's employment.[3] However, the local union encouraged plaintiff to file and process a grievance designed to seek reinstatement to her former position. Although plaintiff initially indicated a desire not to press the grievance, officers of the local union prevailed upon her to file a grievance, which was then processed. In connection therewith the local union employed Bernard N. Katz, Esquire, whose firm served as general counsel to the local union, to represent the local union in the grievance procedure. Prior to the hearing, the parties negotiated a settlement, the terms of which the local union explained to plaintiff, who approved the settlement agreement and executed the necessary documents. Although Food Fair reinstated plaintiff to her former position, it did not provide back pay. However,

1. Plaintiff did not state in the complaint that she signed with Food Fair a settlement agreement which the local union had participated in negotiating and effecting.

2. Plaintiff's complaint offered no explanation of events occurring between her discharge, reinstatement and return to work in January 1979.

3. Food Fair charged plaintiff and another employee with manipulating the report of hours worked so that they got paid for time which they had not worked.

plaintiff had suffered virtually no loss of back pay since reinstatement occurred just three weeks after discharge. Seven days after returning to work, however, plaintiff applied for and received a leave of absence for medical disability. Not surprisingly, the local union has accused plaintiff of "substantially and knowingly misrepresent[ing] the entire factual background" of this case.

After the local and international unions filed motions to dismiss the complaint, plaintiff filed a motion to disqualify the local union's counsel, Richard B. Sigmond, Esquire, a partner of Katz. Plaintiff argued that Sigmond could not represent the local union because his partner had represented it during the grievance process and settlement. Upon hearing oral argument and testimony from plaintiff and Katz, the magistrate denied the motion from the bench and commented that after

> careful consideration [of] the motions and the responses and . . . some research on [his] own . . . what's paramount here and what is essential to this case, and to this particular problem, is . . . found in Ethical Consideration 518 [5–18] to Canon Number 5, which says, "A lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and not to a stockholder, director, officer, employee, representative or other person connected with the entity. In advising the entity, a lawyer should keep paramount its interest and his professional judgment should not be influenced by the personal desires of any person or organization. Occasionally, a lawyer for an entity is requested by a stockholder, director, officer, employee, representative or other person, connected with the entity, to represent him in an individual capacity. In such case, the lawyer may serve the individual

only if the lawyer is convinced that differing interests are not present".

> . . . [T]hat sets the standard for what relationships should govern where . . . a group is represented by an attorney . . . [W]ithin that context, the Motion to Disqualify is denied.

The magistrate also denied plaintiff's motion for a protective order relating to defendants' proposed deposition of plaintiff.

■ Now appealing from that order, plaintiff contends that the magistrate misconstrued the principles of professional conduct prescribed by the Pennsylvania and American Bar Associations. *See* P.B.A. Informal Opinion, 76–3, A.B.A. Opinion 33, A.B.A. Informal Opinion 885, A.B.A. Informal Opinion 891 and A.B.A. Formal Opinion 339. The union argues that the magistrate's determination that no conflict of interests existed regarding Katz and his firm finds support in the testimony at the hearing and evidence of record, which indicated that at no time did Katz formally represent or hold himself our to be plaintiff's attorney. In fact, plaintiff, admitting that Katz did not represent her, testified at the magistrate's hearing as follows:

> Q. What, if anything, did Mr. Katz say about his representing you?
>
> A. He didn't say anything about his representing me. He was more concerned with representing the Local. *He was, indeed, representing the Local.*
>
> \* \* \* \* \* \*
>
> Q. It's true, is it not . . . that Mr. Katz never told you he was your lawyer?
>
> A. No, he did not ever tell me he was my lawyer.

(N.T. 14, 25).[4] Rather, as plaintiff confessed, Katz represented *the local union* in pro-

---

4. The following colloquy between plaintiff and defense counsel transpired at the magistrate's hearing:

Q. Did they explain to you that Mr. Katz was the Union's lawyer?
A. Yes.
Q. Have you ever paid Mr. Katz any money for representing you?
A. Have I ever paid him?
Q. Yes.
A. No, I haven't.
Q. Have you ever paid to the firm of Meranze, Katz, Spear and Wilderman any sum of money for representing you?
A. No.

cessing plaintiff's grievance. To decide that Katz's firm could not represent the local union in this instance would require every labor union to retain several law firms to handle specific areas of potential litigation or proceedings in which the union may become embroiled. Representing the local union in processing a grievance does not automatically disqualify counsel from representing the union when the dissatisfied grievant sues. Testimony clearly indicated that plaintiff never requested Katz or Sigmond to represent her as counsel. In fact, plaintiff admitted she had her own attorney during the entire period of time.[5] No confidential relationship developed between plaintiff and Katz under these circumstances. The benefits which accrued to plaintiff from Katz's representation of the local union and the settlement agreement which he helped to forge and to which plaintiff consented cannot be twisted now in order to remove defense counsel whose knowledge of this particular case and experience in labor law generally no doubt contributed to the amicable settlement reached prior to resort to arbitration or litigation.[6]

 Furthermore, Katz's testimony, if required at trial, simply would describe the steps taken by him as counsel to negotiate the settlement agreement and his communications with representatives of the local union and plaintiff concerning the terms and execution of the agreement. His re-

> Q. Have you ever come to Mr. Katz or any other member of that law firm and offered to retain them as your personal attorney?
> A. No.
> (N.T. 16)

5. Plaintiff testified that she retained her present counsel throughout the grievance process.
> Q. [Y]ou had a lawyer of your own. Is that correct?
> A. Yes.
> Q. And who was your lawyer at that time?
>
> A. Mr. Lovenwirth.
> (N.T. 17)

6. Consider, too, these excerpts of testimony.
> Q. But, my question . . . was did Katz tell you in conversation that you were to only deal with [the local union representative] and [the local union president] and not to call him directly?

marks would relate solely to "the nature and value of legal services rendered in the case by the lawyer to his client", a situation expressly sanctioned by the Code of Professional Responsibility. DR 5–101(B)(3). Any prejudice to plaintiff from Katz's testimony will result only if she has concealed, distorted or misrepresented substantial and material facts to the Court. Accordingly, the order of the magistrate will be affirmed in all respects.

Remaining for consideration is defendants' motion to dismiss the complaint, in which plaintiff alleged that defendants did not adequately represent plaintiff. The international union contends that it could not have breached a duty to represent plaintiff adequately since it had no duty to represent her in the first place and that plaintiff has not alleged bad faith or arbitrary or discriminatory conduct by the international union. The local union adds that plaintiff failed to exhaust internal union remedies. Plaintiff argues that she has stated a claim against both defendants.

 Beyond cavil, the local union had a statutory duty to represent plaintiff fairly and adequately in the negotiation, administration and enforcement of the collective bargaining agreement. *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).[7] Implicit therewith runs the obliga-

> A. Yes.
> Q. And did he tell you that he would report to them?
> A. Yes, he did.
> Q. Mr. Katz at no time told you to fire your own lawyer, did he?
> A. No, he did not.
> Q. He only explained to you that he, as counsel for the Union, would be handling this arbitration proceeding. Correct?
> A. Right.
> (N.T. 22).

7. *See also Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 564, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), *Emporium Capwell Co. v. Western Addition Community Organization,* 420 U.S. 50, 64, 95 S.Ct. 977, 43 L.Ed.2d 12 (1975), *National Labor Relations Board v. Magnavox Co. of Tennessee,* 415 U.S. 322, 325, 94 S.Ct. 1099, 39 L.Ed.2d 358 (1974), *International Association of Machinists v. Street,* 367 U.S. 740, 760–61, 81

tion to protect and defend the interests of all members without hostility or discrimination, to exercise discretion with good faith and honesty and to avoid arbitrary or capricious conduct. *Humphrey v. Moore,* 375 U.S. 335, 342, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). More specifically, the union breaches its duty of fair representation "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith". *Vaca v. Sipes,* 386 U.S. at 190, 87 S.Ct. at 916. To withstand a motion to dismiss, plaintiff must allege arbitrary, discriminatory or bad faith conduct by defendants or specific facts from which such a conclusion can be drawn or inferred.

■ In the case at bar plaintiff has alleged only that plaintiff "was not adequately represented" because the local union representative supposedly never requested reinstatement of plaintiff, that his brother was an international union representative and that his wife replaced plaintiff as front end manager. These allegations are insufficient to support the inference that the unions acted in bad faith or an arbitrary or discriminatory manner.[8] That the local union representative's brother worked for the international union does not *by itself* suggest bad faith unless plaintiff alleges that the brother participated in processing plaintiff's grievance and thereby obstructed or subverted a fair and impartial disposition. Too, by plaintiff's own admission, Food Fair reinstated her to her original position of front end manager, albeit in a different store. Assuming the truth of plaintiff's allegation that the local union representative did not request reinstatement, *Walker Process Equipment, Inc. v. Food Machinery and Chemical Corp.,* 382 U.S. 172, 174–75, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964), *United States v. New Wrinkle, Inc.,* 342 U.S. 371, 376, 72 S.Ct. 350, 96 L.Ed. 417 (1952),[9] the impropriety of his action *alone* will not give rise to the necessary inference. *Vaca v. Sipes,* 386 U.S. at 190, 87 S.Ct. 903, *Brady v. Trans World Airlines,* 401 F.2d at 104. Nor will the fact that the union and Food Fair negotiated a settlement prior to arbitration; *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. at 566–67, 96 S.Ct. 1048, *Vaca v. Sipes,* 386 U.S. at 192, 87 S.Ct. 903. That the union arguably handled the grievance negligently or with poor judgment will not give rise to this inference. *Bazarte v. United Transportation Union,* 429 F.2d at 872. In the case at bar the local union did negotiate a settlement which plaintiff originally approved; the local union also clearly expressed continued interest

S.Ct. 1784, 6 L.Ed.2d 1141 (1961), *Ford Motor Co. v. Huffman,* 345 U.S. 330, 337–38, 73 S.Ct. 681, 97 L.Ed. 1048 (1953), *Brotherhood of Railroad Trainmen v. Howard,* 343 U.S. 768, 772–73, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952), *Wallace Corp. v. National Labor Relations Board,* 323 U.S. 248, 255–56, 65 S.Ct. 238, 89 L.Ed. 216 (1944), *Tunstall v. Brotherhood of Locomotive Firemen and Engineers,* 323 U.S. 210, 213, 65 S.Ct. 235, 89 L.Ed. 187 (1944), *Steele v. Louisville & N. Railroad,* 323 U.S. 192, 204, 65 S.Ct. 226, 89 L.Ed. 173 (1944), *Goclowski v. Penn Central Transportation Co.,* 571 F.2d 747, 760 (3d Cir. 1977), *Deboles v. Trans World Airlines,* 552 F.2d 1005, 1013 (3d Cir.), *cert. denied,* 434 U.S. 837, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977), *Hubicki v. ACF Industries, Inc.,* 484 F.2d 519, 524–25 (3d Cir. 1973), *Price v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 457 F.2d 605, 611 (3d Cir. 1972), *Bazarte v. United Transportation Union,* 429 F.2d 868, 871 (3d Cir. 1970), *Fuller v. Highway Truck Drivers &* *Helpers, Local 107,* 428 F.2d 503, 506 (3d Cir. 1970), *Bruen v. Electrical Workers Local 492,* 425 F.2d 190, 191 (3d Cir. 1970), *Brady v. Trans World Airlines,* 401 F.2d 87, 94 (3d Cir. 1968), *cert. denied,* 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969), *Gainey v. Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees,* 313 F.2d 318, 322 (3d Cir. 1963).

8. We neither reach nor decide the international union's contention that it had no duty of fair representation to plaintiff.

9. *See also Cruz v. Beto,* 405 U.S. 319, 323, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972), *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969) (plurality), *Gardner v. Toilet Goods Association,* 387 U.S. 167, 172, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967), *Kossick v. United Fruit Co.,* 365 U.S. 731, 732, 81 S.Ct. 886, 6 L.Ed.2d 852 (1961).

in processing plaintiff's claim.[10] Plaintiff must adduce some indication of "arbitrary or bad faith conduct" by the union, *Bazarte v. United Transportation Union,* 429 F.2d at 872. She must "make a showing that the action or inaction of the statutory representative complained of was motivated by bad faith". *Gainey v. Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees,* 313 F.2d at 323. Plaintiff has failed to identify any such conduct. *See also Vaca v. Sipes,* 386 U.S. at 190, 87 S.Ct. 903, *Humphrey v. Moore,* 375 U.S. at 342, 84 S.Ct. 363, *Ford Motor Co. v. .Huffman,* 345 U.S. at 337–38, 73 S.Ct. 681, *Brady v. Trans World Airlines,* 401 F.2d at 104.

 Additionally, plaintiff has failed to exhaust available union remedies, a prerequisite to maintaining a claim alleging unfair representation. *Vaca v. Sipes,* 386 U.S. at 184–85, 87 S.Ct. 903, *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652–53, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), *Goclowski v. Penn Central Transportation Co.,* 571 F.2d 747, 757 (3d Cir. 1977), *Hubicki v. ACF Industries, Inc.,* 484 F.2d 519, 522 (3d Cir. 1973), *Brady v. Trans World Airlines,* 401 F.2d at 104, *Kobielnik v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 470 F.Supp. 125, 127 (E.D.Pa.1979), *Dezura v. Firestone Tire & Rubber Co.,* 470 F.Supp. 121, 124 (E.D.Pa.), *aff'd,* 612 F.2d 571 (1979). Of course, where union remedies are unavailable, inadequate or entail meaningless or futile gestures, the requirement may be excused. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. at 563–64, 96 S.Ct. 1048, *Glover v. St. Louis-San Francisco Railway,* 393 U.S. 324, 329, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), *Vaca v. Sipes,* 386 U.S. at 184–85, 87 S.Ct. 903, *Aldridge v. Ludwig-Honold Manufacturing Co.,* 385 F.Supp. 695, 699 (E.D.Pa.1974), *aff'd,* 517 F.2d 1397 (3d Cir.), *cert. denied,* 423 U.S. 937, 96 S.Ct. 298, 46 L.Ed.2d 270 (1975), *Kobielnik v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 470 F.Supp. at 127, *Dezura v. Firestone Tire & Rubber Co.,* 470 F.Supp. at 124.

The constitution of the international union provides that a member can be disciplined for committing any one of eighteen offenses which the constitution considers violative of a member's "duties and obligations". One of these enumerated offenses is "[i]nstituting action outside the Union against the International Union, Local Union, or any of their officers or representatives without first exhausting all remedies provided by the Local Union by laws and rules and the Constitution and laws of the International Union". § 34(B)(4). The president of the international union has the authority "to resolve any dispute between chartered bodies or members thereof . . . subject to an appeal to the International Executive Board". § 9(E). Plaintiff suggests that she attempted to redress the breach of the local union's duty by contacting the international union and that the response from the international union excused the exhaustion requirement. That letter, directed to plaintiff from the field assistant of the international union director, stated that

> [a]s I mentioned in our prior meetings, an official investigation into any grievance cannot be conducted until the grievance proceedure [sic] has run its course and the grievant is dissatisfied with the results.
>
> With this in mind it has been suggested we wait until the grievance proceedure [sic] has concluded before I pursue it any further. As I told you I am satisfied that the proper proceedure [sic] has been followed. What delay we are and have been encountering is company initiated . . .
>
> If the solution is not to your satisfaction a meeting with the local representative, myself and you will be scheduled.
>
> I shall contact you again when the grievance has been concluded.

Contrary to plaintiff's declamations, this letter demonstrates the union's willingness to cooperate fully with plaintiff and indicates an ignored opportunity to obtain satis-

---

**10.** See the letter quoted at 317 *infra.*

faction through the international union. Allowing plaintiff to construe this example of good faith by the international union as evidence of futility would undermine the "strong federal policy of judicial deference to a labor organization's prior opportunity to resolve internal disputes". *Dezura v. Firestone Tire & Rubber Co.,* 470 F.Supp. at 125. *See also Vaca v. Sipes,* 386 U.S. at 191, 87 S.Ct. 903. To sanction disregard of internal union mechanisms designed to settle disputes with members by recognizing plaintiff's single, ambiguous act as sufficiently exhausting internal union remedies eviscerates the settlement process provided by contract, erodes the employer's confidence in the union's authority and invites union members to violate terms of the collective bargaining agreement to which they are contractually bound, *Vaca v. Sipes,* 386 U.S. at 184, 87 S.Ct. 903, *Aldridge v. Ludwig-Honold Manufacturing Co.,* 385 F.Supp. at 698, for

> '[f]inal adjustment by the method agreed upon by the parties is . . . the desirable method for settlement of grievance disputes' . . . This congressional policy 'can be effectuated only by the means chosen by the parties by settlement of their differences under a collective bargaining agreement is given full play.'

*Hines v. Anchor Motor Freight, Inc.,* 424 U.S. at 562, 96 S.Ct. at 1055 quoting *Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 566, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1966). Plaintiff's premature suit deprived defendants of the opportunity to resolve the dispute without the expense, delay and harassment of litigation. Having failed to properly allege unfair representation and to exhaust internal union remedies, plaintiff cannot continue in this forum. Accordingly, defendants' motion to dismiss the complaint will be granted.