Ann RITTER

v.

**WESTERN ELECTRIC CO., INC. (Allentown Works); International Brotherhood of Electrical Workers, AFL–CIO; and International Brotherhood of Electrical Workers, AFL–CIO, Local Union No. 1522.**

Civ. A. No. 80–3427.

United States District Court,
E. D. Pennsylvania.

Nov. 25, 1980.

Minotti & DeEsch, Easton, Pa., for plaintiff.

Mark Dichter, Bruce Endy, Philadelphia, Pa., for Western Elec.

R. H. Markowitz, Philadelphia, Pa., for Internat. Brotherhood.

## MEMORANDUM

TROUTMAN, District Judge.

Promulgation of a rule of law often requires subsequent refinement and explication as courts apply it to new and unanticipated circumstances. The process does not end with the original articulation, "for the many and varying facts to which it will be applied cannot be foreseen".[1] In the case at bar circumstances which will justify a union member's failure to exhaust internal union remedies prior to institution of legal proceedings require more explicit description. Plaintiff alleges that defendants International Brotherhood of Electrical Workers (International Union) and Local Union 1522 thereof (Local Union) "conspired to accomplish her discharge and 'loss' of her grievance"[2] which she filed to protest termination of her employment by defendant Western Electric Company.[3] Although the

1. *Washington v. W. C. Dawson & Co.*, 264 U.S. 219, 236, 44 S.Ct. 302, 308, 68 L.Ed. 646 (1924) (Brandeis, J., dissenting).

2. Complaint, ¶ 14.

3. Defendant Local Union was the certified collective bargaining representative of the em-

ployees at Western Electric, which discharged plaintiff in August 1978 when she refused to attend an alcohol detoxification center. Plaintiff specifically denied that she suffered from any problem with alcohol. The Local Union now moves to dismiss. For present purposes, the allegations of plaintiff's complaint will be accepted as true. *Cruz v. Beto*, 405 U.S. 319,

Local Union processed her grievance through the three-step procedure provided by the applicable collective bargaining agreement,[4] plaintiff complains that the Local Union improperly failed to request arbitration, neglected to advise her of the status and ultimate resolution of her grievance, never gave her a copy of the Union Constitution and never advised her where to obtain one. Therefore, plaintiff contends, she could not possibly comply with the time limits for appeals prescribed by the Union Constitution.[5] Accordingly, plaintiff argues, the Local Union's conduct effectively precluded her from exhausting internal union remedies and excused this requirement.

■ Exhaustion of intra-union remedies, which should be pleaded affirmatively,[6] constitutes a necessary precondition to a suit against a union for breach of the duty of fair representation.[7] Where these remedies are unavailable,[8] inadequate [9] or "entail meaningless or futile gestures" [10] the union member need not satisfy this requirement, even though as a union member he contractually bound himself to do so.[11] A union does not breach its duty of fair representation [12] merely because it arguably handled a

---

92 S.Ct. 1079, 31 L.Ed.2d 263 (1972), *Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964).

4. *Although the parties neither specified the exact collective bargaining agreement existing among them nor provided the Court with a copy of the Union Constitution, Article 9 of the Constitution apparently provides for a three-step grievance procedure, which may be followed by arbitration.*

5. Article XXVII, § 12 of the Union Constitution provides that "any members who claim an injustice has been done him by any [local union] ... may appeal to the [International Vice President] any time within 45 days after the date of the action complained of".

   *Plaintiff complains that the Local Union failed to keep her informed of the status of her grievance and that she did not learn that she had "lost" her grievance until January 1979, more than four months after her discharge, when she called the Local Union president.*

6. *Cubas v. Rapid American Corp.*, 420 F.Supp. 663 (E.D.Pa.1976). To the extent that plaintiff failed to meet these pleading requirements, her motion to amend the complaint will be considered as granted in the interests of justice. See Fed.R.Civ.P. 15(a), *Lang v. Windsor Mount Joy Mutual Insurance Co.*, 487 F.Supp. 1303 (E.D.Pa.1980), *Holman v. Carpenter Technology Corp.*, 484 F.Supp. 406 (E.D.Pa.1980). The Court will accordingly consider defendant's motion to dismiss, assuming the amendment of plaintiff's complaint in the manner indicated in her brief.

7. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), *Hubicki v. ACF Industries, Inc.*, 484 F.2d 519 (3d Cir. 1973), *Brady v. Trans World Airlines*, 401 F.2d 87 (3d Cir. 1968), *cert. denied*, 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969).

8. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), *Vaca v. Sipes, supra, Dezura v. Firestone Tire & Rubber Co.*, 470 F.Supp. 121 (E.D.Pa.1979), *aff'd*, 612 F.2d 571 (3d Cir. 1980), *Kobielnik v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 470 F.Supp. 125 (E.D.Pa.1979).

9. *Glover v. St. Louis-San Francisco Railway*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), *Vaca v. Sipes, supra, Dezura v. Firestone Tire & Rubber Co., supra.*

10. *Griesemer v. Retail Store Employees Union Local 1393*, 482 F.Supp. 312, 314 (E.D.Pa.1980). Courts have found numerous situations "futile": *Glover v. St. Louis-San Francisco Railway, supra* (where the union behaves unfairly prior to the time plaintiff filed a grievance and contributed to the grievance itself), *Vaca v. Sipes, supra* (where the union has sole power to invoke appellate review in the grievance procedure and the union's wrongful refusal to process the grievance prevents plaintiff from exhausting internal remedies; where the employer's conduct amounts to a repudiation of the contractual procedures), *Goclowski v. Penn Central Transportation Co.*, 571 F.2d 747 (3d Cir. 1979) (where the union discloses that its position has become fixed and where officers are unwilling to offer the employee help).

11. *Aldridge v. Ludwig Honold Manufacturing Co.*, 385 F.Supp. 695 (E.D.Pa.1974), *aff'd*, 517 F.2d 1397 (3d Cir.), *cert. denied*, 423 U.S. 937, 96 S.Ct. 298, 46 L.Ed.2d 270 (1975).

12. That the defendant unions had the duty to represent plaintiff fairly and adequately in the negotiation, administration and enforcement of the collective bargaining agreement the parties do not dispute. *See International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979) and *Vaca v. Sipes, supra.* Of course, concomitant therewith runs the obligations "to protect and de-

grievance negligently or with poor judgment[13] or because it settled a grievance short of arbitration,[14] for

> *complete* satisfaction with the degree of representation can hardly be expected in every case. The pertinent question, however, is not whether a union member feels content with the manner in which the union handled the matter; rather, the inquiry focuses on whether the union acted in bad faith.[15]

In the case at bar plaintiff challenges the availability, not the adequacy, of internal union remedies[16] and admits that she never filed an appeal with the International Union.[17] Unfortunately for plaintiff, her reasons for premature resort to the court will not excuse the exhaustion requirement under the circumstances presented here. Sidestepping this integral part of union self-government cannot be justified by ignorance of union procedure,[18] failure

---

fend the interests of all members without hostility or discrimination, to exercise discretion with good faith and honesty and to avoid arbitrary or capricious conduct". *Griesemer v. Retail Store Employees Union Local 1393*, 482 F.Supp. at 316. *See also Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964) and cases cited in *Griesemer*, 484 F.Supp. at 315–16 n. 7.

**13.** *Bazarte v. United Transportation Union*, 429 F.2d 868 (3d Cir. 1970).

**14.** *Hines v. Anchor Motor Freight, Inc., supra.*

**15.** *McClain v. Mack Trucks, Inc.*, 494 F.Supp. 114, 117 (E.D.Pa.1980) (emphasis in the original).

**16.** Although the local union, a defendant, moves to dismiss the complaint, the burden of proving that plaintiff justifiably ignored pursuit of internal union remedies properly falls upon plaintiff, who seeks to fit within the exception to this well established rule. *See Brady v. Trans World Airlines*, 401 F.2d at 104 ("[i]t has been the general rule, and the rule of this circuit, that before a suit against a union for breach of its duty of fair representation may be brought in the courts, *the member must* first exhaust the available internal union remedies, or *show an adequate reason for failing to do so*") (emphasis added), *Deboles v. Trans World Airlines*, 350 F.Supp. 1274, 1289 (E.D.Pa.1972) ("[i]f a *union member* can prove that he failed to exhaust his administrative remedies because such efforts would have been wholly futile, *he* will have demonstrated an adequate reason for failing to pursue available union remedies") (emphasis added), *cf. Glover v. St. Louis-San Francisco Railway*, supra (*plaintiffs* showed that the union acted in concert with the employer to devise schemes and artifices to bar blacks from promotions). Requiring plaintiff to make this showing comports with the generally accepted notion that the burden of proof rests on the party asserting a claim. *Zukoski v. Baltimore & Ohio Railroad*, 315 F.2d 622 (3d Cir. 1963). *Cf. Frame v. B. F. Goodrich Co.*, 453 F.Supp. 63 (E.D.Pa.1978) (an employee who brings a suit against his employer and unions under the Labor Management Relations Act, 29 U.S.C. § 185 et seq., has the burden of showing not only a violation of the collective bargaining agreement but also that his union breached its duty of fair representation).

In addition, the particular facts of plaintiff's circumstances ultimately determine whether exhaustion may be excused. That the union's appellate procedures are available and adequate in a general sense will not be relevant to situations where a plaintiff claims that the system, *as applied to him*, was not available or adequate. To require the union to show that the procedures are fair, available and adequate is much like asking a criminal defendant to decide his own guilt or innocence. As a practical matter, placing the burden on plaintiff eliminates the needless expenditure of time and resources compelled by requiring the union to show that the procedure would be adequate, applicable, fair, available, readily known and "simply and easily initiated and processed" and would not be dilatory, biased, futile or "inordinately lengthy or complicated". *See Yeager v. C. Schmidt & Sons, Inc.*, 343 F.Supp. 927, 929–30 (E.D.Pa.1972) and followed in *Dorn v. Meyers Parking System*, 395 F.Supp. 779 (E.D.Pa. 1975). Few unions will admit readily to such transgressions. Therefore, the responsibility eventually, and virtually automatically, falls upon plaintiff's shoulders anyway. If a plaintiff considers himself rightfully excused from this requirement, he occupies the best position to show the court why he should fit within this exception. This Court has so held. *Dezura v. Firestone Tire & Rubber Co., supra.*

**17.** In effect plaintiff confesses that she never even *attempted* to invoke the appellate union procedure, a requirement mandated by *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1964) and echoed by *Vaca v. Sipes, supra.*

**18.** *Aldridge v. Ludwig Honold Manufacturing Co., supra, Dezura v. Firestone Tire & Rubber Co., supra.*

to procure union rules and regulations,[19] non-prejudicial delays in pressing the grievance,[20] or reliance upon or attention to casual remarks of a union official.[21] Moreover, a bare allegation of conspiracy between the international and local unions will not suffice, for the veracity of these allegations lacks relevance to the instant issue of whether plaintiff properly refused to exhaust internal union remedies.[22] Merely alleging a conspiracy between the employer and the unions will not "counterbalance the strong federal policy of judicial deference to a labor organization's prior opportunity to resolve internal disputes".[23]

Principally, however, plaintiff relies on her inability to comply with the time periods prescribed for appeals to the International Union to explain her failure to exhaust internal union remedies. Plaintiff complains that the Local Union's delay in resolving the grievance irrevocably denied her the opportunity to comply with the appellate time requirement. However, plaintiff never gave the union a chance to make this determination. Plaintiff assumed that the International Union would not entertain an appeal charging that the Local Union deliberately delayed disposition of her grievance beyond the appeal time.[24] The International Union may well decide that the forty-five-day period began to run only when plaintiff learned that the Local Union had terminated its efforts on her behalf. Traditionally, courts allow administrative agencies an opportunity to interpret and implement their regulations prior to judicial intervention.[25] To avert premature adjudication, courts avoid "entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties".[26] By parity of reasoning, the appellate union body should be afforded the opportunity to interpret the parameters of this time requirement without premature judicial interference. And even if the appellate union body construes the time frame to start at a date which excludes plaintiff's claim, the body might possibly allow an appeal nunc pro tunc.[27] To allow plaintiff to *assume* that the appellate union body would disagree invites her to impute animus by the Local Union to the

---

**19.** *Dezura v. Firestone Tire & Rubber Co., supra.*

**20.** *McClain v. Mack Trucks, Inc., supra, Dezura v. Firestone Tire & Rubber Co., supra.*

**21.** The Local Union president allegedly asked plaintiff, "What do you care? You are going to Florida". *Cf. Dezura v. Firestone Tire & Rubber Co.,* 470 F.Supp. at 124 n. 2 (where the union president told the employee that "as far as the local union was concerned, it was over and done and finished").

**22.** *Dezura v. Firestone Tire & Rubber Co., supra.*

**23.** *Dezura v. Firestone Tire & Rubber Co.,* 470 F.Supp. at 125.

**24.** Viewing the pleadings in the light most favorable to plaintiff, *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), this inference may be drawn from the allegations of the amended complaint.

**25.** *Cf. Mikkilinenni v. United Engineers & Constructors, Inc.,* 485 F.Supp. 1292 (E.D.Pa.1980) (allowing administrative agency to interpret federal regulations prior to judicial involvement) and *Mount Joy Construction Co. v. Schramm,* 486 F.Supp. 32 (E.D.Pa.), *aff'd,* 639 F.2d 774 (3d Cir. 1980) (judicial interpretation of federal regulation following agency construction thereof.)

**26.** *Abbot Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

**27.** *See* Fed.R.App.P. 4(a), which states that "[u]pon a showing of excusable neglect, the district court may extend the time for filing the notice of appeal ..." and compare with *Torackio v. Chamberlain Manufacturing Co.,* 456 F.2d 1084 (3d Cir. 1972). *See also Bank Building & Equipment Corp. of America v. Mack Local 677 Federal Credit Union,* 87 F.R.D. 553 (E.D.Pa.1980) (court may grant plaintiff right to jury trial nunc pro tunc); *Consorcio Constructor Impregilo v. Mack Trucks, Inc.,* 497 F.Supp. 591, slip op. at 4 (E.D.Pa.1980) ("court has the power, if not the duty, to review magistrates' rulings independently and carefully, irrespective of [timely] objections raised by the parties") and *Lowenfish v. Kirkpatrick,* No. 79–4317 (E.D.Pa. September 19, 1980) allowing appeal from arbitration award nunc pro tunc).

International Union,[28] a situation which impugns the integrity of the internal union appellate procedure and undermines sound federal labor law policies demanding that plaintiff at least *attempt* to invoke the intra-union appellate process,[29] which unions designed specifically and purposefully to

> provide a neutral forum manumitted from the invective of a possibly hostile workplace and the peccadillos of possibly bigoted supervisors and colleagues ... Plaintiff never gave the international union an opportunity to hear or act upon [her] grievance. Nor has plaintiff alleged or offered any direct evidence of such hostility by the international union.... To accept plaintiff's proffered excuse would allow [her] to act as a self-appointed judge and jury deciding the merits of [her] own charges against the unions. Sanctioning plaintiff's circumvention of this requirement also permits [her] to rewrite [her] contractual duties and responsibilities unilaterally. By sidestepping these procedures plaintiff deprived the appellate union bodies of an opportunity to resolve an intraorganizational dispute without the delay, expense and harassment of litigation. Plaintiff wrenched from their control a chance to continue a uniform method for the orderly settlement of employee grievances.[30]

In addition, excusing the requirement under these circumstances "erodes the employer's confidence in the union's authority and invites members to violate terms of the collective bargaining agreement".[31] Final adjustment of internal union problems by the method agreed upon by the parties remains the preferred way to resolve labor disputes.[32] Plaintiff's premature suit against the Local Union deprived the parties of this opportunity and will be dismissed.

Finally, plaintiff's failure to exhaust internal union remedies also exposes the International Union and her employer to possibly unnecessary and unwarranted litigation. Had plaintiff fulfilled this requirement, it might have been shown that the Unions did not breach their duty to plaintiff. Under these circumstances the direct action permitted by *Vaca v. Sipes*, against the employer would not lie.[33] Therefore, the complaint against the International Union and Western Electric Company will be dismissed as well.

---

**28.** *McClain v. Mack Trucks, Inc., supra, Dezura v. Firestone Tire & Rubber Co., supra.*

**29.** *See* n. 17.

**30.** *McClain v. Mack Trucks, Inc.*, 494 F.Supp. at 117–18.

**31.** *Griesemer v. Retail Store Employees Union Local 1393*, 482 F.Supp. at 318.

**32.** *Hodgson v. Local Union 6799, United Steelworkers of America*, 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971), *Wirtz v. Local Union 125, Laborers' International Union of North America*, 389 U.S. 477, 88 S.Ct. 639, 19 L.Ed.2d 716 (1968).

**33.** *Dezura v. Firestone Tire & Rubber Co., supra, Kobielnik v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, supra.* See also *Prince v. Sun Shipbuilding & Dry Dock Corp.*, 86 F.R.D. 106 (E.D.Pa.1980), *Pawlak v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America Local Union 764*, 444 F.Supp. 807 (M.D.Pa.1977), *aff'd*, 571 F.2d 572 (3d Cir. 1978), *Neipert v. Arthur G. McKee & Co.*, 448 F.Supp. 206 (E.D.Pa.1978). *Cf. Carey v. Beans*, 500 F.Supp. 580, No. 80–253 (E.D.Pa. October 20, 1980) (dismissing part of a complaint *sua sponte* where the amended complaint afforded a sufficient basis for the court's action).