**Robert ANDERSON, Jr., et al., Plaintiffs,**

v.

**ALPHA PORTLAND INDUSTRIES, INC., et al., Defendants.**

**No. 82–1413C(4).**

United States District Court, E.D. Missouri, E.D.

Nov. 12, 1982.

On Motion for New Trial March 4, 1983.

Sheldon Weinhaus, Levin & Weinhaus, St. Louis, Mo., for plaintiffs.

George S. Hecker, Michael G. Biggers, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for Industries and Ins. and Health Plan.

Edward K. Fehlig, Ziercher, Hocker, Human, Michenfelder, Nations & Jones, St. Louis, Mo., for defendants.

MEMORANDUM

HUNGATE, District Judge.

This matter is before the Court on various pretrial motions.

Plaintiffs are all retired employees of the defendant Alpha Portland Industries, Inc.' (Alpha) formerly employed by its division, Alpha Portland Cement Company at the division's St. Louis facility. Jurisdiction is invoked pursuant to the Employee Retirement Income Security Act (ERISA) § 502, 29 U.S.C. § 1132 and the Labor-Management Relations Act (LMRA) § 301, 29 U.S.C. § 185.

Also named as a defendant is the Insurance and Health Plan for Hourly Employees of Alpha Portland Cement Company; Alpha administers the aforesaid Plan, which is represented by the same counsel herein, and both entities will be referred to below collectively as Alpha. The Equitable Life Assurance Society of the United States (Equitable) is also named as a defendant.

Plaintiffs assert their claims as beneficiaries of certain collective bargaining agreements and related insurance agreements executed from time to time by Alpha and plaintiffs' union representatives, none of whom have been joined in this action. It is the retirees' contention that they are entitled to life insurance and hospitalization and surgical benefits enforceable under the agreements for the remainder of their lives. By their initial complaint, they seek mandatory injunctive relief and compensatory damages.

Due to adverse business conditions, Alpha either closed or sold the assets of its six remaining cement plants during the period from 1978 to September, 1982, including the St. Louis plant. Following consultations and negotiations with both the international and remaining local unions during 1981 and 1982, Alpha terminated the pertinent coverage effective May 1, 1982, upon expiration of all existing collective bargaining agreements. All retirees were notified of the proposed action March 29, 1982. Thereafter, Alpha concluded labor contracts with its existing employees to cover the period

up to its liquidation of the remaining cement plants. These last agreements expressly excluded the benefits now in controversy.

Alpha moves for summary judgment pursuant to Rules 12(b)(1), 12(b)(6), and 56(a) of the Federal Rules of Civil Procedure. It is Alpha's contention that the rights in dispute are governed by labor contracts containing grievance procedures which culminate in binding arbitration. It states that plaintiffs have failed to exhaust these contractual remedies. Based on well-established principles favoring exhaustion of such remedies under federal labor and pension laws, Alpha contends that subject matter jurisdiction may not be assumed over this dispute.

Alpha correctly asserts that

"It is a settled principle that no action can be brought under 29 U.S.C. § 185(a) until a party attempts to exhaust his contractual remedies as to any claim." *Petersen v. Rath Packing Co.*, 461 F.2d 312, 315 (8th Cir.1972); *Bonnot v. Congress of Independent Unions Local # 14*, 331 F.2d 355 (8th Cir.1964). Exhaustion of nonjudicial remedies must be pled in a complaint. *Hayes v. New England Millwork Distributors*, 602 F.2d 15, 18 (1st Cir.1979).

*International Molders and Allied Workers Union v. Aquarius Shoe Corp.*, 511 F.Supp. 361, 363 (E.D.Mo.1981); *see Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

■ The same requirement of exhaustion of contract remedies applies to suits under ERISA. *E.g., Challenger v. Local Union 1, International Bridge, Structural & Ornamental Ironworkers*, 619 F.2d 645, 647 (7th Cir.1980); *Amato v. Bernard*, 618 F.2d 559, 566–68 (9th Cir.1980); *Carpenters Local No. 1846 v. Pratt-Farnsworth, Inc.*, 511 F.Supp. 509, 515 (E.D.La.1981); *see Sample v. Monsanto Co.*, 485 F.Supp. 1018, 1019 (E.D.Mo. 1980).

It is plaintiffs' position that they are entitled to life-long insurance coverage because such benefits were "vested" upon their retirement and could not thereafter be defeated by Alpha's unilateral action or bargained away in subsequent negotiations. Alpha denies any such liability on a variety of grounds.

Regardless of the merits of these contentions, plaintiffs' central allegation is that Alpha failed to honor an alleged commitment made in the bargaining process:

That the cancellation of said insurance coverage constitutes a violation of the prior collective bargaining agreements with plaintiffs' collective bargaining representatives under which plaintiffs retired, violates the terms of the various plans then extant and in effect at the time of retirement, and further violates the terms of the summary plan description.

Complaint ¶ 23.

Whatever rights they now assert stem from the "Insurance and Health Agreement of Alpha Portland Industries, as amended May 1, 1978, and its predecessor agreements (collectively referred to as the Insurance Agreement)." Complaint Exhibit 1. The agreement embodied in that exhibit was an appendix to the 1978 collective bargaining agreement (the Basic Agreement) executed by Alpha, the United Cement, Lime and Gypsum Workers International Union (the International Union) and the various local unions at Alpha's plants then operating throughout the country.

Sections 1 and 2 of Article XII of the 1978 Insurance Agreement specify the life insurance, hospitalization and surgical benefits available to Alpha retirees who retired during all periods commencing from November 1, 1948 up to April 30, 1979.

■ The Insurance Agreement at Article II, § 5, specifies that:

Any difference arising under this Program respecting the administration, determination and/or implementation of the Program shall be subject to the grievance procedure established in the Basic

Agreement beginning with Step 2 of such procedure.

Complaint Exhibit 1. Plaintiffs nowhere dispute that this suit concerns a difference respecting the administration, determination, and/or implementation of the "Program," as that term is elsewhere defined within the Insurance Agreement to include the benefits presently in controversy. The method for processing a grievance is clearly set out in the 1978 Basic Agreement for the St. Louis plant.

Plaintiffs' argument that binding arbitration is not required by these agreements is not persuasive. The Court is of the opinion that they are clear and unambiguous in establishing a binding method of dispute resolution. Alpha Exhibits 13–23, 26–28. *See Challenger, supra* at 647.

Plaintiffs also contend there are other reasons why they should not be bound by the grievance process. They cite their status as retirees, the dissolution of the local union, the St. Louis plant closure, and Alpha's alleged favorable negotiating position as to any such grievance, as reasons in support of the present litigation. (*E.g.,* Plaintiffs Price and Ratty affidavits).

None of these arguments excuses the required exhaustion of remedies. Plaintiffs' status as retirees does not distinguish their claims. Neither does it deny the international union's authority to vindicate their rights.

Plaintiffs mistakenly rely on *Allied Chemical & Alkali Workers of America v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971) for the proposition that the representational authority of the unions ceased upon their retirement. That case is inapposite:

In *Pittsburgh Plate Glass,* the Supreme Court held that the retirement benefits of already retired employees were not a mandatory subject of bargaining under the National Labor Relations Act.

\* \* \* \* \* \*

The issue presented in this case is different than that considered in *Pittsburgh Plate Glass.* Here, unlike the latter cited case, the issue is not whether the Company must bargain with the Union over the benefits of retired employees, but rather whether the Company did, in fact, contractually commit itself to provide continuous insurance coverage for retirees for the duration of their natural lives. If the Company made such a commitment in the collective bargaining agreement it entered into with the Union, "then under accepted contract principles the union has a legitimate interest in protecting the rights of the retirees and is entitled to seek enforcement of the applicable contract provisions." *United Steelworkers of America, AFL–CIO v. Canron, Inc.,* 580 F.2d 77, 80–81 (3d Cir.1978) (footnote omitted). For these reasons, the Third Circuit in *United Steelworkers of America v. Canron, Inc., supra,* recently affirmed a District Court Order directing that arbitration proceed between an employer and a union over the question of insurance coverage for retirees.

*Textile Workers of America, AFL–CIO, Local 129 v. Columbia Mills, Inc.,* 471 F.Supp. 527, 530–31 (N.D.N.Y.1978); *see also Local 589, International Ladies' Garment Workers' Union, AFL–CIO v. Kellwood Company,* 592 F.2d 1008, 1011–12 (8th Cir.1979); *McLaughlin v. E-Systems, Inc.,* 403 F.Supp. 67, 69–70 (N.D.Tex.1975). The *Columbia Mills* opinion goes on to state at 531:

Finally, the Company argues that the termination of the collective bargaining agreement and the cessation of operations by the Company renders arbitration ineffective and inappropriate.... However, in light of the Supreme Court's decision in *Nolde Brothers, Inc. v. Local No. 358, AFL–CIO* [430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300], *supra,* these arguments must be rejected.

\* \* \* \* \* \*

In the present case, as in *Nolde Brothers,* the dispute arises under the collective bargaining agreement since the underlying claim rests upon the proper interpretation to be given to the relevant contract provisions. Therefore, the fact that

the collective bargaining agreement has been terminated, and the fact that the Company's operations have ceased does not provide a sufficient reason to bar arbitration of the grievance presented in this case.

As to the other reasons offered to excuse exhaustion, it is plaintiffs' burden to show why contract remedies have not been complied with and this record clearly does not do so. *Wolf v. National Shopmen Pension Fund,* 512 F.Supp. 1182, 1183 (E.D.Pa.1981); *see Ritter v. Western Electric Co.,* 504 F.Supp. 886 (E.D.Pa.1980) and cases cited therein. For example, plaintiffs may not rely, as they have attempted to, on the casual remarks of union officials to sidestep the established system of industrial self-governance. *Ritter, id.* at 890.

Finally, plaintiffs assert they formally requested continuation of the benefits by counsel's letter of June 1, 1982 (complaint exhibit 5). They argue that Alpha waived any right to insist on contractual remedies by failing to respond within 90 days with a written statement of the reasons for denial of what they allege was a "claim" for benefits. ERISA § 503(1), 29 U.S.C. § 1133(1), and 29 C.F.R. § 2560.503–1(a)(3). Plaintiffs have presumed that this satisfies the exhaustion requirement which is a precondition to any action in this Court. Plaintiffs more fully argue these points in their cross-motion for summary judgment against Alpha. The arguments are without merit. *Challenger, supra* at 648; *Wolf v. National Shopmen Pension Fund, supra* at 1183.

For all of the foregoing reasons, Alpha's motion for summary judgment will be granted.

Plaintiffs also seek relief against Equitable alleging that it was the insurance carrier under the Insurance Agreement and as such is a party-in-interest pursuant to ERISA § 3(14)(B); 29 U.S.C. § 1002(14)(B). In consequence of the Court's decision to grant summary judgment in favor of Alpha as to the underlying complaint, the claim against Equitable will be dismissed.

In view of these determinations, all other pending motions in this case will be denied as moot.

The Court's order of September 23, 1982, setting a hearing as to class certification in this matter will be vacated as moot.

## MEMORANDUM

### On Motion For New Trial

This matter is before the Court on plaintiffs' motion for new trial and related requests to supplement the record.

The Court granted the motion of defendants Alpha Portland Industries, Inc., and the Insurance and Health Plan for Hourly Employees of Alpha Portland Cement Company (collectively referred to as Alpha), for summary judgment on November 12, 1982. All other pending claims and motions were either dismissed or denied as moot on that date.

In ruling in favor of Alpha pursuant to the parties' cross-motions for summary judgment, the Court relied upon well-established principles governing the issues of arbitrability and the requirement to exhaust non-judicial remedies provided within collective bargaining agreements. *See generally United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 584–85, 80 S.Ct. 1347, 1353–54, 4 L.Ed.2d 1409 (1960) and *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). *See also Laundry, Dry Cleaning and Dye House Workers Local 93 v. Mahoney,* 491 F.2d 1029 (8th Cir.1974), *cert. denied,* 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 49 (1974); *Bonnot v. Congress of Independent Unions Local 14,* 331 F.2d 355 (8th Cir.1964). Under the circumstances presented by the record in this case, it was the finding of the Court that these principles applied equally with respect to plaintiffs' claims based upon the Employee Retirement Income Security Act and regulations promulgated thereunder. *See, e.g., Challenger v. Local Union 1, International Bridge, Structural & Ornamental Ironworkers,* 619 F.2d 645, 647 (7th Cir.1980); *International Molders and Allied Workers Union v. Aquarius Shoe Corp.,* 511 F.Supp. 361 (E.D.Mo.1981).

Plaintiffs move for a new trial pursuant to Fed.R.Civ.P. 59. They also seek to introduce additional evidence not previously submitted for the Court's consideration. The motion is in essence one to reconsider the grant of summary judgment since no trial on the merits of plaintiffs' claims took place.

The Court will deny plaintiffs' efforts to supplement the record. Plaintiffs purport to offer new evidence concerning arbitrability and exhaustion. This evidence is either not in fact new, irrelevant or cumulative, or supports arguments which confuse the material issues presented by Alpha's motion for summary judgment.

In reference to the merits of plaintiffs' motion for new trial or reconsideration of the summary judgment granted November 12, 1982, the Court is of the opinion that a detailed exposition of all of the points and authorities raised is not warranted. Because the great bulk of this argument concerning grievance machinery, exhaustion, excuse, waiver, and estoppel is wholly repetitious and unpersuasive, the Court will continue to rely upon its order and memorandum previously filed. The motion for new trial or reconsideration will be denied.

Finally, within their motion for new trial, plaintiffs express confusion as to the meaning and import of the November 12 order. They seek amendment of that order altering the Court's disposition of this cause in the form of either a dismissal without prejudice or a stay of the proceedings pending proper exhaustion of non-judicial remedies.

The Court believes that careful attention to the authorities cited within its November 12 memorandum will dispel any confusion which may exist. The Court will not alter the order of summary judgment previously granted in favor of dismissal without prejudice. See Fed.R.Civ.P. 12(b) and 56(c); International Molders and Allied Workers Union v. Aquarius Shoe Corp., supra at 362. Plaintiffs are barred from relitigating the facts which they have asserted constitute or excuse exhaustion of contractual remedies. Nevertheless, as defendants concede, this disposition is not a bar to future proceedings and remedies based upon genuine exhaustion or some clearly demonstrable ground excusing exhaustion. Id. at 364; see also Amato v. Bernard, 618 F.2d 559, 569 (9th Cir.1980).

The requested modification for purposes of imposing a stay pending resort to grievance proceedings will also be denied. Plaintiffs' protestations of defendants' bad faith or mistrust regarding grievance processing are not supported by the record in this cause. The Court agrees with defendants' contention that it was plaintiffs' choice to eschew contractual grievance proceedings in favor of the present lawsuit. Any delay in the determination of the merits of their claims is thus more properly attributable to them. The Court believes plaintiffs' pleadings and motions have begun to approach the foothills of dilatory and frivolous practice. If that ground is reached, sanctions will be imposed.