444 F.Supp. 807 (1977)
John A. PAWLAK, Individually and as Shop Steward for the Over-the-Road Drivers of the White Deer Domicile of Interstate Motor Freight System, Inc., at White Deer, Pennsylvania, Plaintiff,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN, AND HELPERS OF AMERICA, LOCAL UNION NO. 764, et al., Defendants.
Civ. No. 77-106.
United States District Court, M. D. Pennsylvania.
April 26, 1977.
*808 *809 Graham C. Showalter, Lewisburg, Pa., for plaintiff.
Handler, Gerber & Weinstock, Harrisburg, Pa., for defendant International Brotherhood of Teamsters.
James A. Matthews, Jr., Dennis J. Morikawa, Philadelphia, Pa., for defendant Interstate Motor Freight Systems, Inc.

OPINION
MUIR, District Judge.
Currently pending is a motion to dismiss filed by Defendant International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 764 (the "Local"). For purposes of the motion, the Court will accept as true all well-pleaded allegations contained in the Complaint and will construe it in the light most favorable to Plaintiff Pawlak in order to determine whether, under any circumstances, he might be entitled to relief. See Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Helstoski v. Goldstein, 552 F.2d 564 (3d Cir. 1976). Consequently, any statement of fact contained in this Opinion indicates only that it has been well-pleaded, not that it has been proven.
Pawlak belongs to the Local and drives truck "over the road" for Defendant Interstate Motor Freight System, Inc., a trucking concern engaged in interstate commerce. Pawlak also holds the position of "shop steward" for the over-the-road drivers represented by the Local and employed by Interstate at its terminal located near the intersection of U.S. Route 15 and Interstate 80 in Union County, Pennsylvania and known as the White Deer terminal. In this action under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, Pawlak seeks preliminary and permanent injunctive relief, costs, attorney's fees, and "such other and further relief as may be deemed to be just and proper".
On April 1, 1976, the Local and Interstate consummated a collective bargaining contract known as the "National Master Freight Agreement and Central Pennsylvania Over-the-Road Cartage Supplemental Agreement" (hereinafter "NMFA"), which continues to cover the over-the-road drivers at the foregoing terminal. Under Article 6, § 1 of the NMFA, which provides that all conditions of employment relating to "general working conditions" are to be ". . . maintained at not less than the highest standards in effect at the time of the signing of this Agreement . . .", a September 25, 1975 "Method of Dispatch" agreed to by the Local and Interstate remained in effect.
In March, 1976, Interstate broached a new Method of Dispatch to the Local's officers. However, in August, 1976 and October, 1976, the rank-and-file voted not to accept the company's proposal.
In November, 1976, the Local's President, Charles E. Greenawalt unilaterally executed a new Method of Dispatch with Interstate in complete disregard of the prior balloting and § 26 of the Local's By-Laws, which requires ratification by the membership of such action. Implementation of the new dispatch procedures violated Article 6, § 1 of the NMFA by lowering the general working conditions which were in effect under the September 25, 1975 Method.
On December 28, 1976, Pawlak, on behalf of himself and other over-the-road drivers, *810 filed a grievance with Interstate pursuant to the NMFA. On January 10, 1977, the Local notified Pawlak that the grievance would not be processed. As of this date, neither Defendant has acted on the grievance.
Pawlak alleges that the Local breached its duty of fair representation by consummating the November, 1976 Method of Dispatch agreement in violation of the Local's By-Laws, by participating in a violation of the NMFA, and by failing to prosecute his grievance. Pawlak charges Interstate with a violation of the NMFA for its part in the creation of the new Method of Dispatch. Pawlak contends that the Defendants' action "seriously threatens and jeopardizes the amicable relations theretofore existing between the parties" and inflicts on him and other over-the-road drivers "immediate and irreparable harm and injury far beyond the loss of money involved". The areas affected by the new Method of Dispatch are ". . . right to exercise seniority, free time, classification, availability of required time after rest, regulation of foreign drivers, earnings, bid days, time off, service time, trip choice, combination runs, method of choosing trip, and earning power."
In order to maintain a Section 301 suit against his employer based on an alleged breach of the collective bargaining agreement, a union member must fully utilize the contract's grievance and arbitration procedures. Vaca v. Sipes, 386 U.S. 171, 184-185, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Hubicki v. ACF Industries, Inc., 484 F.2d 519 (3d Cir. 1973). Repudiation of the grievance procedure by the employer or refusal to process a grievance by a Union which controls the procedural machinery excuses a plaintiff's failure to exhaust. Pawlak contends that he falls within the second exception.
The Local's rejection of Pawlak's grievance frustrated his initial efforts to challenge the new Method of Dispatch through the channels created by the NMFA. However, he was not justified in immediately filing this action. Whenever a union member has been mistreated by his bargaining representative, he must also avail himself of his intra-union remedies before turning to the courts for relief. Cf. Brady v. Trans World Airlines, 401 F.2d 87, 104 (3d Cir. 1968), cert. den. 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969); Ruzicka v. General Motors Corp., 523 F.2d 306, 311 (6th Cir. 1975); Imel v. Zohn Mfg. Co., 481 F.2d 181, 184 (10th Cir. 1973), cert. den. 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469 (1974). Pawlak has made no attempt whatsoever to challenge the flouting of his grievance by invoking the steps through which a rank-and-file employee can bring charges against a local Union officer. See International Constitution Article XIX and the Local's By-Laws, § 20. To rationalize his omission, Pawlak cites the International Union's bias, the prejudice inflicted by a delay, his ignorance of the procedures, and the inadequacy of the available remedies.
If every union member who disagreed with some action taken by a local union official could invoke the alleged unfairness of the international union to rationalize his failure to follow intra-union avenues of relief, the exhaustion of remedies doctrine would be emasculated. Federal Labor policy, which precludes premature judicial interference with the internal affairs of a labor organization, Cf. Brady v. Trans World Airlines, 401 F.2d 87, 104 (3d Cir. 1968), cert. den. 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969), implicitly sanctions such self-regulation by unions, notwithstanding the wholly plausible argument that the union's upper echelon is predisposed to favor local officers over members.
Pawlak's allegations of irreparable injury do not suffice to convince the Court that he is without an adequate remedy at law. Certainly, money damages can rectify much of the alleged prejudice. His other purported injuries  the loss of certain "fringe benefits" and work-related amenities  if in fact not compensable in dollars, are not substantial enough to overcome the policy considerations which militate against this Court's jurisdiction. Consequently, the delay attendant Pawlak's pursuit of the Union channels will not inflict irreparable harm.
*811 Pawlak does not aver that he has never received or seen a copy of the Union's International Constitution or the Local's By-Laws which contain explicit reference to the trials and appeals procedure. The mere fact that he has never been involved in or aware of the use of that mechanism cannot catapault him over the exhaustion hurdle to this Court's jurisdiction. If, despite his position as a shop steward, he was ignorant of his intra-union procedural rights, he now knows about and can utilize them.
A fine or suspension of Local President Greenawalt for his refusal to process the grievance would be inadequate to rectify Pawlak's underlying complaint  the new Method of Dispatch. The intra-union relief available to him is not, however, so limited. In addition to being fined or suspended, a local officer may be commanded ". . . to do or perform, or refrain from doing or performing, specified acts", which would include the processing of a grievance. International Constitution, Article XIX, Section 9(a). Therefore, the Union's internal machinery does make it feasible for Pawlak to overcome the Local's recalcitrance and have his grievance processed without the aid of this Court.
Pawlak's allegation that the Union thwarted his attempts to pursue his grievance is unsubstantiated. Although the Local's officers rebuffed him, the larger organization itself was never given an opportunity to act. Cf. Brady v. Trans World Airlines, 401 F.2d 87, 104 (3d Cir. 1968), cert. den. 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969); Ruzicka v. General Motors Corp., 523 F.2d 306, 311 (6th Cir. 1975). "It is no excuse that it would have been futile to present plaintiff's grievances to the local officers. The plaintiff was obliged to comply with the intra-union appeal procedure; and absent such compliance, the courts lack jurisdiction to hear the complaint." Imel v. Zohn Mfg. Co., 481 F.2d 181, 184 (10th Cir. 1973), cert. den. 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469 (1974). Unlike the employee in Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), whose Union refused to process his grievance and who would have been remediless if turned away by the courts, Pawlak has options which he has not yet exercised.
Pawlak contends that even if his grievance is processed by the Union, it will amount to an exercise in futility because the parties whose activity he challenges will pass judgment on the complaint. Cf. Price v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 46 F.R.D. 18 (E.D.Pa.1969). However, the NMFA precludes any such occurrence. Pursuant to Article 8, § 1(a) a request for an interpretation of the NMFA, such as the one sought by Pawlak in this case, is to be submitted directly to the "Conference Joint Area Committee", also referred to as the "Joint Area Grievance Committee," see Article 43, § 8, which makes a record and immediately transmits the matter to the "National Grievance Committee." Article 43, § 2(a) provides that the Joint Area Grievance Committee is to be comprised of "Conference members" (companies) operating in eleven Central and North Central Pennsylvania cities as well as representatives from eight Locals. The Conference delegate and the Local representative from the city or Local involved in a proceeding before the Joint Area Grievance Committee are ineligible to act on that matter. Consequently, since representatives from the White Deer Interstate terminal and the Defendant Local are disqualified even from participation in the making of a record on Pawlak's grievance, he will not be forced to face the alleged malfeasants when presenting his contentions. Furthermore, the grievance will be finally adjudicated by a national committee which is even further removed from the situation out of which the dispute arises. The NMFA affords Pawlak as reasonably fair an opportunity to air his complaint as can be expected under a self-policing system.
In the light of the foregoing, Pawlak's omission of steps available to push his grievance bars his breach-of-contract action against Interstate. Although Interstate has not filed its own motion to dismiss, the Court will sua sponte note the absence of *812 the necessary conditions precedent to its jurisdiction and dismiss the case against the company.
In addition to the grievance matter, Pawlak charges the Local with other violations of its duty of fair representation, specifically, the President's ultra vires execution of the November, 1976 dispatch agreement and his collaboration in a breach of the NMFA. For the reasons discussed above, Pawlak's failure to pursue the intra-union appeals procedures available to him in an attempt to reverse the Local's deeds precludes his action against the White Deer Local at this time. Consequently, the Local's motion to dismiss will be granted, and the suit dismissed in its entirety.
Any claim that pursuit of the intra-union avenues would inflict irreparable harm on Pawlak does not withstand analysis. A union's breach of its duty of fair representation may in some factual circumstances inflict injury which cannot be remedied at law. However, as discussed above, the alleged prejudice to Pawlak attributable to the new Method of Dispatch and exacerbated by the Local's recalcitrance can be substantially compensated by money damages.
In light of the foregoing, the Court need not reach the issue of whether Pawlak may prosecute this case both as an individual and on behalf of other over-the-road drivers in his capacity as "shop steward". It is to be noted, however, that Pawlak has not sought class certification under F.R.Civ.P. 23.
An appropriate order dismissing the above-captioned case for lack of subject-matter jurisdiction will be entered.