Jimmie **NANNEY**, Plaintiff,

v.

**CHRYSLER CORPORATION and Local 1183 of the United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), Defendants.**

**Civ. A. No. 83–725–WKS.**

United States District Court, D. Delaware.

Dec. 26, 1984.

Michael C. Heyden, Wilmington, Del., for plaintiff.

W. Laird Stabler, III, Potter, Anderson & Corroon, Wilmington, Del., William T. McLellan, Chrysler Corp., Detroit, Mich., for defendant Chrysler.

John Biggs, III, Biggs & Battaglia, Wilmington, Del.; Richard H. Markowitz, Andrew L. Markowitz, Markowitz & Richman, Philadelphia, Pa.; Jordan Rossen, General Counsel, Leonard R. Page, Associate General Counsel, International Union, United Automobile, Aerospace & Agricultural Implement Workers of America-UAW, Detroit, Mich., for defendant Local 1183.

## MEMORANDUM OPINION

STAPLETON, Chief Judge:

This is a duty of fair representation and breach of contract action brought by plaintiff Jimmy Nanney against his union, Local 1183 of the United Automobile, Aerospace and Agricultural Implement Workers of America (the "Union"), and his employer, Chrysler Corporation. At issue is the settlement by the Union and Chrysler of a grievance against Chrysler filed by the Union on plaintiff's behalf. Plaintiff claims that his Union breached its duty of fair representation by improperly settling the grievance, and that Chrysler violated its collective bargaining agreement with the Union by failing to provide plaintiff with certain vacation and holiday pay and other benefits pursuant to the settlement agreement. Plaintiff brought this action under the Labor Relations Management Act of 1947, 29 U.S.C. § 185.

Both the Union and Chrysler now move for summary judgment on the ground that plaintiff Nanney failed to exhaust the internal union remedies set forth in the union constitution. In addition, Chrysler brings this motion alleging that Nanney's claim is precluded by the applicable statute of limitations. The Union also argues that it did not, as a matter of law, breach its duty of fair representation by settling the plaintiff's grievance.

I will grant the motion of both defendants on the ground that plaintiff failed to exhaust his internal union remedies.

### I

Plaintiff was first employed by Chrysler in March, 1969, and became a member of the Union shortly thereafter. Nanney worked for Chrysler as a tool-maker in its Newark, Delaware assembly plant.

On September 24, 1981, the plaintiff was indefinitely suspended by Chrysler for his alleged violation of Shop Rule I which prohibits "falsification of employment application or other corporation records or the use of falsified documents."

On October 5, 1981, plaintiff's suspension was changed by Chrysler into a discharge and his employment was terminated. On the same day, the Union filed a grievance on Nanney's behalf, protesting his discharge.

Thereafter, the Union pursued the plaintiff's grievance through step four of the grievance procedure as set forth in the Collective Bargaining Agreement (the "Agreement") between the Union and Chrysler. *See* Agreement § 27. At the Appeal Board stage of step four of the grievance procedure, a settlement was reached providing for plaintiff's reinstatement with full seniority and with back pay in the amount of $18,000.00 less normal deductions. In its written disposition of the plaintiff's grievance dated January 14, 1983, the Appeal Board stated:

> In full settlement of this case J. Nanney will be offered reinstatement in accordance with his seniority provided he can meet normal requirements. Upon reinstatement, J. Nanney shall be paid eighteen-thousand ($18,000.00), less his normal deductions.[1]

Accordingly, plaintiff returned to work in late January, 1983. Several weeks later, Nanney received a check from Chrysler in the amount of $12,004.00, representing $18,000.00 of backpay less payroll deductions. Thereafter, in May 1983, plaintiff received a check from Chrysler for the holiday and vacation pay that he had earned since returning to work in late January, 1983.

Nanney's holiday and vacation pay was calculated on the basis of the thirteen weeks he *actually* worked from his reinstatement in late January to May, 1983 in accordance with the graduated schedule outlined in section 106(b) of the Agreement. Nanney contends, however, that his holiday and vacation pay should have been calculated on the basis of the entire year he would have worked had he not been wrongfully discharged by Chrysler.

After receipt in May 1983 of his vacation and holiday paycheck, Nanney complained to his shop steward that he was entitled to the full amount of vacation and holiday pay

as if he had been working during the 1982 period preceding his January 1983 reinstatement. The shop steward raised Nanney's complaint with a Chrysler labor relations representative, who informed the shop steward that Nanney received everything he was entitled to under the settlement of his grievance. The steward communicated Chrysler's position to Nanney. Plaintiff did not thereafter file an appeal with *either* the Local or International Union complaining of the disposition of his grievance with respect to the amount of vacation and holiday pay and other benefits he received.

In his statement of the facts, plaintiff particularly complains of the handling of his grievance during step three of the grievance procedure. *See* Agreement § 26. In accordance with step three, Nanney's grievance was transmitted to the President of the Local, who is obligated to take up the matter with the Plant Manager or his designated representative at an arranged meeting. The President herein at issue informed Nanney that if there was no settlement after the third step of the grievance procedure, the Union would proceed to what the President called "Instant Arbitration."[2]

Between his termination on October 5, 1981, and February 8, 1982, Nanney frequently contacted the President inquiring about the status of his grievance. The President assured plaintiff that his grievance was being properly processed. During the last week in January, 1982, in response to his inquiry, plaintiff was informed by the President that the meeting required by step three of the grievance process had taken place. Plaintiff requested a copy of the minutes of that meeting, but the President responded that he was too busy to provide them.

---

1. *See* plaintiff's deposition, Union Exhibit 8.

2. "Instant Arbitration" appears to be a special arbitration program "designed to provide an expeditious way of submitting to arbitration a limited number of certain discharge and disci-pline grievances and other arbitrable grievances that involve only credibility issues." "Instant arbitration" evidently becomes available after completion of Step Three of the grievance procedure. *See* Agreement at 217–220.

On February 8, 1982, plaintiff again inquired of the President about the status of his grievance. The President informed Nanney that the grievance had been transmitted to the Regional Representative of the Union, Mr. Ferrara. Mr. Ferrara told Nanney, however, that he had never received the grievance even though he had pressed the President for it on three previous occasions. When confronted with this, the President admitted to Nanney that he had never sent it to Ferrara. When Nanney reminded the President that he had promised "instant arbitration" in the event that the grievance was not resolved after step three, the President presented Nanney with a form to sign authorizing arbitration.

Plaintiff was subsequently advised by Mr. Ferrara in the summer of 1982 that his grievance would go to arbitration on August 15, 1982. That date was rescheduled on three different occasions. Finally in December 1982, Nanney was informed by Joan Patterson, a representative of the International Union, that the grievance had been settled. In early January, 1983, Nanney again spoke with Patterson and raised the issue of his vacation pay and other benefits arising during the period prior to his reinstatement. Patterson informed him that the settlement providing him with $18,000 backpay and seniority was final and urged him to accept it. She informed him that she would not take his request with respect to vacation pay back to Chrysler for further negotiations.

Notwithstanding this conversation, Nanney contends that Patterson led him to believe that the time he had been deprived of work would be counted as "time worked" for the purposes of the Union benefit package which included vacation, holiday and retirement benefits. Plaintiff further claims that he was led to believe that all references to his suspension and discharge would be expunged from his record.

Since I find that plaintiff failed to utilize his Union's internal appeals procedure without adequate explanation, and that summary judgment is therefore warranted, I need not decide whether there are genuine issues of material fact with respect to the additional grounds for summary judgment raised by defendants.

II

"Whenever a union member has been mistreated by his bargaining representative, he must ... avail himself of his intra-union remedies before turning to the courts for relief." *Pawlak v. Int'l Bhd. of Teamsters*, 444 F.Supp. 807, 810 (M.D.Pa. 1977), *aff'd without opinion*, 571 F.2d 572 (3d Cir.1978) (citations omitted). Moreover, if a union member fails to exhaust his intra-union remedies, he carries the burden of explaining his failure. *See Brady v. Trans World Airlines, Inc.*, 401 F.2d 87, 104 (3d Cir.1968), *cert. denied*, 393 U.S. 1048, 89 S.Ct. 684, 21 L.Ed.2d 691 (1969) ("The member must first exhaust the available internal union remedies, or show an adequate reason for failing to do so.")

Recently, the Supreme Court of the United States reaffirmed the policy underlying the exhaustion of internal remedies requirement, but only where the internal union appeals procedure can either grant the aggrieved employee full relief or reactivate his grievance. *Clayton v. U.A.W.*, 451 U.S. 679, 696, 101 S.Ct. 2088, 2099, 68 L.Ed.2d 538 (1981). *Clayton* indicated that the exhaustion of internal union remedies is not an absolute requirement, and listed "at least three factors", the existence of which would allow a court to excuse an employee's failure to exhaust:

> [F]irst, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

*Id.* at 689, 101 S.Ct. at 2095.

Nanney defends his failure to exhaust the Union's internal appeals procedure on

two grounds. First, he asserts that resort to the Union's internal appeal procedure would have been futile since the appeal procedure could not have provided the relief he seeks in this action; and, second, that resort to the internal appeal procedure would unreasonably delay disposition of his claim. These grounds must be examined to determine whether plaintiff falls within any of the exceptions listed in *Clayton* or otherwise recognized by the Third Circuit.

Articles 32 and 33 of the UAW Constitution set forth the Union's internal appeals procedure. Article 33 provides members the right to challenge the actions of the Local and International Union, or their officials, in a wide range of areas, including grievance handling. If a member feels aggrieved by an action of the Local or one of its officials, he or she may appeal that action to the membership of the Local. If the membership fails to act or rejects the challenge, the member has the right to appeal to the International Executive Board (the "IEB"). Or, if the action challenged is that of an agent of the International Union, rather than the Local, the member may file the challenge directly with the IEB. Article 33 § 2(a). If the member is dissatisfied with the decision of the IEB, he or she may appeal the decision to the Convention Appeals Committee, or to the Public Review Board ("PRB"). *Id.*[3]

■ Finally, Section 5 of Article 33, entitled "Obligation to Exhaust Internal Union Remedies", provides:

> It shall be the duty of any individual or body, if aggrieved by any action, decision or penalty imposed, to exhaust fully the individual or body's remedy and all appeals under this Constitution and the rules of this Union before going to a civil court or governmental agency for redress.

As a member of the Union, Nanney was contractually bound to follow this procedure. *Kobielnik v. Teamsters*, 470 F.Supp. 125, 127 (E.D.Pa.1979) (citing *Aldridge v. Ludwig-Honold Mnfg. Co.*, 385 F.Supp. 695 (E.D.Pa.), *aff'd*, 517 F.2d 1397 (3d Cir.), *cert. denied*, 423 U.S. 937, 96 S.Ct. 298, 46 L.Ed.2d 270 (1975).

■ Plaintiff's first assertion—that the Union was powerless in this case to provide him relief, and that resort to the internal appeal procedure would therefore have been futile—is without merit, since it overlooks the existence of a "reactivation-of-grievance" agreement between Chrysler and the Union.

By way of letter agreement dated November 5, 1976, entitled "Reinstated Grievances" (the "Letter Agreement"), the UAW and Chrysler agreed to allow the reinstatement of settled grievances under certain conditions. This reactivation-of-grievance agreement provides in pertinent part:[4]

> However, in those instances where the International Union, UAW, by either its (i) Executive Board, (ii) Public Review Board, or (iii) Constitutional Convention Appeals Committee has reviewed the disposition of a grievance and found that such disposition was improperly effected by the Union or a Union representative involved, the UAW Chrysler Department may inform the Corporate Labor Relations Staff in writing that such grievance is reinstated in the grievance procedure at the step at which the original disposition of the grievance occurred.

In light of the Letter Agreement, Nanney's assertion that the Union was powerless to pursue his grievance beyond its settlement would appear to be in error. Nanney's complaint relates to the terms of the settlement of his grievance as effected by the Union, and would therefore appear to be precisely the type of issue the Letter

---

**3.** *See* affidavit of Carolyn Forrest, Administrative Assistant to President of the International Union, UAW, for an explanation and description of the Union internal appeal procedure.

**4.** Defendants submitted an affidavit by Robert Jensen, an Administrative Assistant to Vice-President & Director of the Union's Chrysler Department. He personally participated in the negotiation of the above Letter Agreement, and attests that the agreement is still in effect and applies to all grievances except those which were settled or withdrawn prior to November 5, 1976.

Agreement is intended to address. Having offered no evidence whatsoever that the Letter Agreement is not applicable to the present case, Nanney's first argument must fail.

Plaintiff's second argument, that resort to the Union's internal appeals procedure would have been unduly time-consuming, is similarly without merit. Plaintiff appears to argue that since the Union's efforts to resolve his grievance during the grievance procedure were characterized by allegedly unreasonable delays, he should not be obligated to subject himself to the possibility of again encountering such delays by utilizing the Union's internal appeal process. Nanney points out that approximately sixteen months transpired between his discharge in October 1981 and his reinstatement in late January 1983. In addition, Nanney contends, and it is not disputed on the present record, that the Local Union President acted irresponsibly in processing his grievance and thereby causing unnecessary delay.

The problem with Nanney's second argument is that he again offers no evidence whatever in support of his contention that resort to the internal appeals process would have been unduly time-consuming. *See Dezura v. Firestone Tire & Rubber Co.*, 470 F.Supp. 121, 124 (E.D.Pa.), *aff'd without opinion*, 612 F.2d 571 (3d Cir. 1979) ("Unsupported by evidence, the bare allegation that resort to appeal procedures could possibly entail years of further delay cannot justify plaintiff's failure to act.").

Furthermore, Article 33 of the UAW Constitution appears to set forth a reasonably expeditious procedure for the adjudication of internal union appeals. A member must appeal any decision of a Local to the Local membership within sixty (60) days of learning of the alleged action or decision appealed. When no regularly scheduled meeting of the membership body is held within forty-five (45) days of receipt of the appeal, the Local Union Executive Board may consider and rule on the appeal. Article 33, §§ 3(a), 4(c). A decision of the Local must be appealed within thirty (30) days to the IEB. Art. 33 § 4(c). Once the Nine Member Committee of the IEB decides the appeal, that decision becomes the final decision of the full International Executive Board unless a member of the Board raises an objection. If an objection is raised, the appeal shall be referred for decision to the full IEB at its next regular meeting. Art. 33 § 3(d). The IEB "shall use its best efforts to render its decision within sixty (60) days of receipt of the appeal ..." *Id.* The decision of the IEB may be appealed within thirty (30) days either to the Convention Appeals Committee or the Public Review Board. Art. 33 § 4(c). The Convention Appeals Committee must meet at least semi-annually to act on all appeals that have been submitted to it at least thirty (30) days prior to the date established for the meetings. Art. 33 § 3(e).

Nanney's unsupported contention that resort to the internal union appeal process would unreasonably delay disposition of his complaint is further undercut by the recognition among courts that the UAW internal appeal procedures are fair and reasonable. *E.g., Winter v. Local Union No. 639*, 569 F.2d 146, 151 n. 26 (D.C.Cir.1976). Indeed, in reference to the expeditiousness of the UAW internal appeal process, one court has stated:

> While no empirical or comparative data is in the record before this Court, these procedures have been haled by other Courts, and commentators, as being virtually unique in the American labor movement, in providing fair and rapid disposition of internal union appeals.

*Monroe v. International Union, UAW*, 540 F.Supp. 249, 258 (S.D.Ohio 1982), *aff'd*, 723 F.2d 22 (6th Cir.1983).[5]

---

5. It is worth noting that had Nanney obtained reactivation of his grievance by appeal to the Union, it appears unlikely that the resulting reconsideration of his grievance by Chrysler and the Union would take nearly as long as did the original processing of the grievance. Nanney's original grievance traveled through four different steps before it was settled in accordance with the procedure set forth in the Agreement. According to the Letter Agreement, how-

**1254**

While plaintiff does not expressly so state, one of his concerns may be that the Local Union President, whom Nanney holds especially responsible for both delaying and improperly disposing of his grievance, may participate in the internal appeal procedure and may therefore be in a position to frustrate Nanney's efforts at redress. Nothing in Article 33, however, indicates that a Local Union President would evaluate an internal union appeal. During the "Local" phase of the internal appeals process, it would appear that only the Local membership and the Local Union Executive Board have authority to review appeals. *See* Art. 33 § 3(a).

More significantly, I read Article 33 to permit individuals in plaintiff's position to appeal directly to the IEB and bypass the Local altogether. Nanney challenges the terms of the settlement of his grievance as finally agreed upon by the UAW-Chrysler Appeal Board, a grievance panel consisting of "two but not more than three executives of the Corporation and two but not more than three official *representatives of the International Union,* and an Impartial Chairman." Agreement § 28(a) (emphasis added). Section 2(a) of Article 33 of the Union Constitution in turn allows a member bringing an internal union appeal to bypass the Local and appeal directly to the IEB "[w]here the challenge is against an International Representative...."

In sum, none of plaintiff's argument adequately explain his failure to engage the Union's internal appeal procedure. Since the facts concerning Nanney's failure to pursue his union remedies are not in dispute, the Union's motion for summary judgment will be granted.

The final issue is whether plaintiff's failure to exhaust his internal union remedies also warrants the granting of Chrysler's motion for summary judgment. In this case, Nanney failed to show that the International Union lacked authority to

reactivate his grievance pursuant to the Letter Agreement. Under these circumstances plaintiff's failure to exhaust the internal appeals procedure precludes this action against Chrysler. *Dezura,* 470 F.Supp. at 125; *see Pawlak,* 444 F.Supp. at 811–12. Accordingly, Chrysler's motion for summary judgment will also be granted.

ever, a reactivated grievance "is reinstated in the grievance procedure at the step at which the original disposition of the grievance occurred." Thus, if reactivated, Nanney's grievance would have been considered only at the fourth and last step of the grievance procedure. *See* Jensen affidavit.