James **WALKER**, Jr., Plaintiff,

v.

**CHRYSLER CORPORATION**,
Defendant.

Civ. A. No. 82–422–JLL.

United States District Court,
D. Delaware.

Jan. 29, 1985.

John A. Elzufon of Elzufon & Bailey, P.A., Wilmington, Del., for plaintiff.

Joseph H. Geoghegan and W. Laird Stabler, III of Potter, Anderson & Corroon, Wilmington, Del., and William T. McLellan, Detroit, Mich., of counsel, for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

This case arises from the abortive settlement efforts in a labor dispute between James Walker, Jr. ("Walker"), the plaintiff, and his employer, Chrysler Corporation ("Chrysler"), the defendant; it is presently before the Court on Chrysler's motion for summary judgment. Because the Court agrees with Chrysler that Walker failed to exhaust his internal union appeals before bringing this suit, the motion will be granted.[1]

## I. BACKGROUND

On April 23, 1981, Walker called his place of employment at Chrysler's Newark, Delaware facility to report that he was ill and would be absent from work. (Docket Item ["D.I."] 16 at 68–69.) Following its standard procedure, Chrysler sent to Walker a form which he was to have his physician fill out and return to Chrysler as verification of the medical problems entitling him to sick leave. (*Id.* at 23.) Walker did take the form to his doctor, but a mix-up in the doctor's office greatly delayed its return to Chrysler. (D.I. 28 at Exhibit D.) In the meantime, having waited several weeks without receiving medical confirmation of Walker's illness, Chrysler sent Walker a letter by registered mail asking him to report for work by June 9, 1981, or to satisfactorily prove that reasons beyond his control prevented him from doing so. (D.I. 25 at Exhibit 1.) The letter was returned to Chrysler marked "unclaimed." (*Id.* at Exhibit 2.) When June ninth arrived without Walker having returned to work or having explained his absence, Walker's seniority and its accompanying benefits were automatically forfeited by operation of the collective bargaining agreement between Chrysler and Walker's labor union, the United Automobile, Aerospace and Agricul-

---

1. Thus disposing of the plaintiff's cause of action, the Court does not address the question of the timeliness of this suit.

tural Implement Workers of America ("UAW").[2] (D.I. 14 at 8.)

Walker learned of this consequence and at his behest Local 1183 of the UAW filed a grievance seeking reinstatement of Walker's seniority and benefits. (D.I. 28 at Exhibit F.) The union unsuccessfully pressed the grievance at several of the stages provided for in the collective bargaining agreement until at the fourth level of grievance review (see D.I. 16 at 71; D.I. 25 at 4; D.I. 28 at 6) the UAW's International Union withdrew the grievance "without prejudice" and Chrysler consented to the withdrawal. (D.I. 25 at Exhibit 5; D.I. 28 at Exhibit H.) Walker learned of this from a letter sent to him by the president of his local union (D.I. 28 at 7, Exhibit I); it stated in part, "[T]he International Union has notified me of the final disposition of your discharge. [Y]our grievance was withdrawn ... and ... is not subject to further review." (D.I. 28 at Exhibit I.)

Walker believed that the union's withdrawal of his grievance might have been based on the mistaken belief that he had independently reached a satisfactory settlement with Chrysler. (D.I. 16 at 74–75.) To correct any such misunderstanding, he went to his local union again to discuss the matter but was told that the union no longer represented him. (Id. at 75.) The Local president advised Walker to seek independent legal advice. (Id.)

■ Walker had already retained an attorney. Indeed, before the union withdrew Walker's grievance, the present action had been filed in state court, removed to this court,[3] and, by agreement of the parties, allowed to lay dormant until the UAW-Chrysler review of the grievance was finished. (D.I. 1; D.I. 4.) After learning that his client's grievance had been withdrawn, Walker's attorney wrote to the International Union to ask that it be reinstated (D.I. 28 at 7), but received a reply indicating there would be no reinstatement. (Id. at Exhibit J.) Walker then reactivated this suit.

## II. LAW

■ Summary judgment shall be rendered upon motion of a party if that party demonstrates that there is no issue as to any material fact in the case and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 156, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Applying this standard is a three-step process: first, determining the basic issues, the matter or matters in dispute; second, ascertaining the law governing such matters; and third, using that law to gauge the materiality of any factual issues and to refine and resolve the legal issues.

From a reading of the complaint alone it would appear that the issue in this case is whether Chrysler's termination of Walker's seniority and benefits was somehow wrongful, either tortious or a breach of contract. (See D.I. 1 at Complaint ¶ 9.) Unlike an ordinary tort or contract case, however, this dispute is governed exclusively by Federal law because it arises

---

**2.** "Termination of seniority," the language used in the collective bargaining agreement, means essentially that Walker was fired. (See D.I. 35.)

**3.** The case is properly in this Court, but, in candor, the Court is not pleased with the manner in which removal has been accomplished. Instead of squarely facing and addressing at the outset the fact that Walker's complaint at no point cites or speaks of federal law, that it is instead entirely couched in the language of a common law business tort suit, Chrysler stated in its petition for removal, "The Complaint ... purports to set forth a cause of action arising under ... 29 U.S.C. § 185." (D.I. 1 at 2.) That statement is misleading and sweeps under the rug important questions about the propriety of removal. Nevertheless, because it is clear from the complaint and Walker's brief in opposition to this summary judgment motion that Walker is claiming to have been discharged in violation of the UAW-Chrysler collective bargaining agreement (see D.I. 1 at Complaint ¶ 9; D.I. 28 at 4–7), and because the law is clear that such a claim can only be made under federal law, see, e.g., AVCO Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists and Aerospace Workers, 390 U.S. 557, 560, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968); Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957); Fristoe v. Reynolds Metals Co., 615 F.2d 1209, 1211–12 (9th Cir. 1980), it follows that this case is one properly removeable under 28 U.S.C. § 1441.

from an employment relationship that is based on a collective bargaining agreement. (*See supra* n. 2.) Accordingly, despite Walker's pleading of his claim as one arising under state law and as his own brief tacitly acknowledges (D.I. 28 at 3), this case must be decided under Federal law—specifically, under that body of law generated by 29 U.S.C. § 185(a).

■ After its passage as § 301(a) of the Labor Management Relations Act, the statute now codified at 29 U.S.C. § 185(a) was held by the United States Supreme Court to constitute congressional authorization for federal courts to create substantive law for the enforcement of collective bargaining agreements, such as the one involved in this case. *Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448, 451, 456, 77 S.Ct. 912, 915, 918, 1 L.Ed.2d 972 (1957). One principle of labor law which has thus been fashioned is that "[a]n employee seeking a remedy for an alleged breach of the collective-bargaining agreement between his union and employer must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement before he may maintain a suit against his ... employer under § 301(a) ...." *Clayton v. International Union, UAW*, 451 U.S. 679, 681, 101 S.Ct. 2088, 2091, 68 L.Ed.2d 538 (1981). This exhaustion requirement is based on a "policy that encourages private rather than judicial resolution of disputes arising over collective-bargaining agreements." *Id.* at 689, 101 S.Ct. at 2095. The same policy has prompted the Supreme Court to extend the exhaustion requirement to internal union appeals procedures, when, as in this case (*see id.* at 691 n. 18, 101 S.Ct. at 2096 n. 18; D.I. 25 at Exhibit 6), such procedures "can result in either complete relief to an aggrieved employee or reactivation of his grievance ...." *Clayton*, 451 U.S. at 692, 101 S.Ct. at 2097. This requirement becomes particularly potent when, again as in this case (*see* D.I. 25 at Exhibit 6, § 5), the employee has a clear and unambiguous contractual obligation to resort first to the internal union process. *See Local Union No. 1075, United Rubber, Cork, Linoleum*

*and Plastic Workers of America v. United Rubber, Cork, Linoleum and Plastic Workers of America*, 716 F.2d 182, 187 (3d Cir.1983). Nevertheless, courts may overlook a litigant's failure to exhaust his internal union remedies if, for example,

> union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; [or] ... the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; [or] ... exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of this claim.

451 U.S. at 689, 101 S.Ct. at 2095. Under these and other circumstances of similar seriousness the exhaustion requirement can be relaxed because "the [Supreme] Court has created a case-by-case factual standard turning on the issue of when it becomes clear that further internal appeals would be futile." *Scott v. International Brotherhood of Teamsters, Chauffers, Warehousemen, and Helpers of America*, 725 F.2d 226, 229 (3d Cir.1984).

That Walker failed to exhaust his internal union appeals is beyond dispute; the most that he can say is that he "reasonably exhausted" them (D.I. 28 at 3), by which he apparently means that he was not aware he had further recourse within the union (D.I. 16 at 76) and that he does not believe the internal appeals system will work for him. (D.I. 28 at 13.) Yet, notwithstanding his conception of "reasonable exhaustion," the fact remains that Walker did not fully employ the relief procedures available to him within his union. The issue before the Court thus becomes whether some persuasive excuse exists for pardoning Walker's failure to exhaust his internal union appeals. The Court is convinced there is none.

■ Walker lists four reasons why the exhaustion requirement should not be applied in this case. First, he asserts that union officials misled him by saying that

his grievance was not subject to further review. (D.I. 28 at 14–19.) There is ample evidence that he was indeed so informed (*see* D.I. 16 at 75–76; D.I. 28 at Exhibits I and J), but, as Chrysler quite rightly points out, he should not have been misled because the union officials' statements were correct. (*See* D.I. 31 at 5–6.) The officials told Walker that, as to his claims, the grievance negotiation process set up by the UAW and Chrysler had run its course; in their words, "your grievance was withdrawn ... and therefore is not subject to further review[;]" (D.I. 28 at Exhibit I) and "the grievance did not merit to the umpire [sic], therefore the grievance was taken out of procedure." (*Id.* at Exhibit J.) These statements mention nothing about Walker's right to launch the entirely separate process of appealing within the union its decision to withdraw his grievance. But even if union officials had flatly misstated the availability of intra-union remedies, that would still not serve as an excuse for Walker's failure to learn and act on the truth. He "had a duty to acquaint himself with the nature and availability of union remedies. He was certainly not 'justified in remaining in ignorance of the provisions governing his own union or, in fact, of relying on a statement by an officer that there was nothing he could do.'" *Dezura v. Firestone Tire & Rubber Co.,* 470 F.Supp. 121, 124 (E.D.Pa.), *aff'd without opinion,* 612 F.2d 571 (3d Cir.1979) (citing *Aldridge v. Ludwig-Honold Mfg. Co.,* 385 F.Supp. 695, 698 (E.D.Pa.1974), *aff'd,* 517 F.2d 1397 (3d Cir.), *cert. denied,* 423 U.S. 937, 96 S.Ct. 298, 46 L.Ed.2d 270 (1975)).[4]

■ Second, Walker contends that it is unreasonable to require exhaustion in cases like this because relief through internal union appeal is inadequate; he emphasizes that Chrysler alone, not the union, can reinstate an employee and restore his benefits. (D.I. 28 at 19.) The court ad-

dressed this same argument in *Nanney v. Chrysler Corp.,* 600 F.Supp. 1248, 1252–1253 (D.Del.1984), and rejected it, saying "[such reasoning] overlooks the existence of a 'reactivation-of-grievance' agreement between Chrysler and the Union." *Id.* at 1252. The agreement provides, in pertinent part, that

> in those instances where the International Union, UAW, ... has reviewed the disposition of a grievance and found that such disposition was improperly effected by the Union or a Union representative involved, the UAW Chrysler Department may inform the Corporate Labor Relations Staff in writing that such grievance is reinstated in the grievance procedure at the step at which the original disposition of the grievance occurred.

(D.I. 25 at Exhibit 7.) According to the Supreme Court, this kind of provision is "presumably ... adequate." *Clayton,* 451 U.S. at 691 n. 18, 101 S.Ct. at 2096 n. 18. The Court added that "if [an] employee obtained reactivation of his grievance through internal union procedures, ... the employee would be required to submit his claim to the collectively bargained dispute-resolution procedures. [E]xhaustion of internal remedies could result in final resolution of the employee's contractual grievance through private rather than judicial avenues." *Id.* at 692, 101 S.Ct. at 2097. These plain precedents prove that Walker's intra-union remedy was indeed legally adequate.

■ Third, Walker urges that his failure to exhaust should be excused because pursuing his internal union appeals would have caused unreasonable delay in the adjudication of the merits of his case. (D.I. 28 at 20–21.) The Court agrees with Walker that, had he appealed the withdrawal of his grievance, he would have incurred "an incalculable amount of additional delay and expense ...." (*Id.* at 20.) But the delay

---

**4.** Walker argues that the Supreme Court's decision in *Clayton v. UAW,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981), and subsequent opinions of the United States Court of Appeals for the Third Circuit have *sub silentio* overruled *Dezura.* (D.I. 28 at 17.) The argument is un-

persuasive. As this Court's recent citation of *Dezura* indicates, the law in that opinion remains very much in force. *See Nanney v. Chrysler Corp.,* 600 F.Supp. 1248, 1253 (D.Del. 1984).

and expense are incalculable precisely because of Walker's failure to appeal; his protestations of hardship in the appeals process are wholly hypothetical. When a union member has made no effort to take advantage of internal union remedies and provides the court with no evidence showing that those remedies are unlikely to produce some resolution of his case within a reasonable length of time, he cannot then claim a right to judicial relief. *See Jenkins v. General Motors Corp.*, 364 F.Supp. 302, 308 (D.Del.1973).

 Fourth and finally, Walker argues that his turning to this Court is not premature because his union had already "breached their [sic] duty of fair representation by arbitrarily withdrawing his grievance." (D.I. 28 at 21.) Even if Walker's characterization of the union's action were correct, however, the point is irrelevant. The Supreme Court has stated unequivocally that if an internal union appeal could result in reactivation of an employee's grievance, then the employee must pursue that appeal because

> by reactivating the grievance, the union might be able to rectify the very wrong of which the employee complains—a breach of the duty of fair representation caused by the union's failure to seek arbitration—and the employee would then be unable to satisfy the precondition to a § 301 suit against the employer.

*Clayton*, 451 U.S. at 692 n. 21, 101 S.Ct. at 2097 n. 21. The message could not be clearer, nor could the result of its application to these facts: despite Walker's belief that he has been ill-represented by the UAW, before resorting to the court, he was obliged to work within the union for reactivation of his grievance.

## III. CONCLUSION

The frequently declared national policy favoring private over judicial settlement of labor disputes, *see, e.g., id.* at 689, 101 S.Ct. at 2095; *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965); *Textile Workers Union of America v. Lincoln Mills*, 353 U.S.

448, 456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957), has as one of its concrete expressions the requirement that employees governed by a collective bargaining agreement must generally exhaust the remedies available to them under the agreement and through internal union appeals before bringing suit. Because Walker, without adequate excuse, has failed to abide by that requirement, Chrysler is entitled to summary judgment.

An order will be entered in accordance with this opinion.