An appropriate Order will enter.

Thomas MURMAN, Plaintiff,

v.

**RENOLD POWER TRANSMISSION CORPORATION, Atlas Chain Company, Inc. and United Automobile, Aerospace and Agricultural Implement Workers of America, Local Union No. 271, Defendants.**

Civ. No. 84–1550.

United States District Court,
M.D. Pennsylvania.

Sept. 26, 1985.

---

Joseph A. Lakowski, Pittston, Pa., for plaintiff.

Richard A. Russo, Mark Van Loon, Rosenn, Jenkins & Greenwald, Wilkes-Barre, Pa., for Renold Power Transmission Corp.

Stephen C. Richman, Richard H. Markowitz, William T. Josem, Philadelphia, Pa., for United Auto., Aerospace and Agr. Implement Workers of America, Local Union 271.

Andrew Hailstone, Henkelman, Kreder, O'Connell & Brooks, Scranton, Pa., for Atlas Chain Co.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Plaintiff brought this action pursuant to § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) alleging that defendants, union and employer, violated the collective bargaining agreement by improperly refusing to continue plaintiff's Blue Cross/Blue Shield insurance coverage.

Cross motions for summary judgment have been filed by all parties and the motions are now ripe for disposition. For the reasons set forth below, the motions for summary judgment filed by Renold Power Transmission Corporation [Renold], Atlas Chain Company, Inc. [Atlas chain] and the United Automobile Aerospace and Agricultural Implement Workers of America, Local Union 271 [Union] will be granted and plaintiff's Motion for Summary Judgment will be denied.[1]

1. Defendants have filed a statement of material facts as required by Local Rule 401.4. Plaintiff

## I. FACTS

According to the undisputed facts set forth by defendants, plaintiff was originally employed as an assembler in 1956 by Atlas Chain and Precision Products, Inc. and a member of Local Union 271. Plaintiff was injured sometime in March, 1974 and has not worked since April 4, 1974.

In July, 1974 Atlas Chain and Precision Products Company and Renold, Inc. merged and operated under the name of the former. In February, 1981, the company's name was changed to Renold Power Transmission Corporation [Renold].

During the merging and name-changing, plaintiff, pursuant to collective bargaining agreements and as a member of the Union, continued to receive all his disability benefits and, specifically, coverage for Blue Cross/Blue Shield was provided.

In August, 1982, however, Renold announced that it would no longer continue with its chain manufacturing operations and would attempt to locate a buyer. If no purchaser was located, production would cease in March, 1983. Apparently Renold was unable to find a buyer because in March, 1983, the chain operations were closed and all but a skeleton crew were permanently laid-off. Plaintiff had been advised in January, 1983 that his employment status would be terminated on March 1, 1983. An Asset Purchase Agreement dated June 17, 1983, resulted in Renold selling its manufacturing operations to Atlas.[2] Atlas was formed for the purpose of acquiring Renold's assets at the West Pittston location in order to continue the operation of the plant pursuant to an Employee Stock Ownership Plan. Later, in October of the same year, Renold and the Union entered into a "Plant Close-Down Agreement" which terminated the existing collective bargaining agreement as of August 15, 1983 between Renold and the Union and which, upon ratification, terminated all employees', including plaintiff's, health insurance coverage. Plaintiff was advised of

the ratification meeting but did not attend. Atlas and the Union entered into a collective bargaining agreement substantially the same as the former agreement between Renold and the Union. The Atlas collective bargaining agreement, however, provided that those employees who had contributed $200.00 for the study of the Employee Stock Ownership Plan would retain the seniority they had previously held with Renold. Those who had not contributed would acquire seniority as of their first day of employment with Atlas.

Although plaintiff had been informed of the Union's wish for a study regarding the ESOP and had been requested to provide a $200.00 contribution, he did not contribute because he had insufficient funds. The letter requesting contribution stated that if the ESOP were successful, those who had contributed would be hired first. Because plaintiff did not contribute, he did not obtain seniority pursuant to the Union-Atlas Collective Bargaining Agreement. Atlas provided health insurance benefits for the former Renold employees who were called back to work. Those employees who were not called back were required to provide their own coverage.

By letter dated November 9, 1983, plaintiff was informed that he was transferred from group to non-group coverage for health insurance and he would be billed directly in the future by the health insurance carrier for all premiums. After being informed of this, plaintiff did not file a grievance under the collective bargaining agreement, nor did he request anyone in the Union to file a grievance on his behalf.

## II. DISCUSSION

Defendants contend, *inter alia*, that plaintiff's failure to exhaust the internal union grievance procedure forecloses his ability to maintain this suit. The court agrees. Because the court finds the ex-

has not controverted these facts, and under our Local Rule, defendants' statements of facts are deemed admitted.

2. The new company became Atlas Chain Company, Inc. [Atlas].

haustion issue dispositive, the merits of plaintiff's claims are not reached.

In *Clayton v. International Union, Automobile Aerospace & Agricultural Implement Workers of America,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981), the Supreme Court held that only under limited circumstances would exhaustion of internal union procedures be excused. The Court held that "where the internal union procedures cannot result in reactivation of the employee's grievance *or* an award of the complete relief sought in his § 301(a) suit, exhaustion will not be required with respect to either the suit against the employer or the suit against the union." *Id.* at 685, 101 S.Ct. at 2093 (emphasis added).

In *Clayton,* plaintiff was dismissed from his employment for violating a plant rule prohibiting certain behavior. Pursuant to the collective bargaining agreement, plaintiff asked his union representative to file a grievance on the ground that just cause did not exist for his dismissal. After investigation, the union decided not to proceed with the grievance by going to arbitration. Plaintiff did not appeal the decision but instead filed an action in federal court pursuant to § 301(a) of the Labor Management Relations Act. 29 U.S.C. § 185(a). The Supreme Court held that plaintiff's failure to exhaust, *i.e.,* appeal the union's refusal to proceed on plaintiff's grievance to arbitration, did not bar his suit against the union because the union was not empowered to grant the relief plaintiff sought, *viz.,* reversal of the decision to dismiss him.

The facts presented in the case *sub judice* are similar to *Clayton* but differ in two respects. First, Murman is not seeking re-employment, but rather has limited his request to monetary damages, that is, continued payment of his health insurance premiums. Second, unlike the plaintiff in *Clayton,* Murman never attempted to pursue a grievance through his union and against the employer. In other words, plaintiff never attempted to submit his claim to union or employer that he was entitled to continued coverage of health insurance benefits. Instead, plaintiff instituted suit in this court.

 Before an employee may maintain a § 301 suit against his employer, he must first allege that his union breached its duty to fairly represent him. *Vosch v. Werner Continental, Inc.,* 734 F.2d 149 (3d Cir. 1984); *see United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 67, 101 S.Ct. 1559, 1566, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring in the judgment) ("a plaintiff must prevail upon his unfair representation claim before he even litigates the merits of his § 301 claim against the employer."). It is uncontested that plaintiff never filed a grievance with the union challenging the termination of his insurance benefits. Having never filed a grievance, plaintiff can hardly argue a breach of the duty of fair representation on the union's part. *See Huggins v. Teamsters Local 312,* 585 F.Supp. 148 (E.D.Pa.1984) (no analogy to *Clayton* because plaintiff never initiated the grievance procedure whereas plaintiff in *Clayton* made three attempts to resolve his discharge by the established procedure).

 In opposition to an exhaustion requirement, plaintiff baldly asserts that he "did not have to exhaust his administrative remedies because plaintiff was not considered able to return to work at Atlas Chain Company and was unemployable due to his being on Workmen's Compensation and further he had reported the complaint about the loss of his Blue Cross/Blue Shield coverage to the Union President, William Scott, as required anyway." Supplemental Brief in Support of an Opposion [sic] to Defendants' Motion for Summary Judgment, Document 39 of the Record at 1. Plaintiff's brief is devoid of any case law which might support his theory. The court is at a loss to understand why the fact that plaintiff was unemployable due to his disability affects his procedural remedies. Even a discharged employee must pursue internal union procedures unless he fits within the exceptions enunciated by the Court in *Clayton, supra. See also Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). As a

result, the court finds that plaintiff cannot maintain an action against the union for breach of a duty of fair representation when the plaintiff never even attempted to file a grievance challenging the conduct. To the extent that plaintiff reported his complaint to William Scott, the Union President, the court finds it insufficient. Even viewing plaintiff's conclusory statement that plaintiff spoke to the Union President and that was sufficient as an argument that the union refused to proceed to arbitration, the court would not find plaintiff's failure to exhaust internal union remedies to fit within the ambit of the *Clayton* exceptions.

The Supreme Court in *Clayton* emphasized, and our Court of Appeals agreed, *see Local Union 1075 v. United Rubber, Cork, Lineoleum and Plastic Workers of America,* 716 F.2d 182, 186 (3d Cir.1983), that the district court must retain its discretion as to when exhaustion should be required. *Clayton* listed "at least three factors", the existence of which would allow a court to excuse an employee's failure to exhaust:

> First, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. If any of these factors are found to exist, the court may properly excuse the employee's failure to exhaust.

**3.** The court notes plaintiff is only seeking restoration of payment for his benefits and reimbursement for payments he has made. Complaint, Document 1 of the Record at 3. The court also notes that the adequacy of the UAW's intra-union remedies has been judicially recognized. *See Battle v. Clark Equipment Co.,* 579 F.2d 1338, 1343 (7th Cir.1978). Further, our Court of Appeals noted that there was a constitutional provision in the UAW Constitution which clearly and unambiguously directed re-

*Clayton, supra,* 451 U.S. at 689, 101 S.Ct. at 2095.

While plaintiff has not argued any of these exceptions, the record is devoid of any inference that any of them exist. In this case, had plaintiff grieved his denial of Blue Cross/Blue Shield benefits, the Union would have been able to afford plaintiff complete relief since the UAW International has the power to grant monetary damages.[3] Further, plaintiff has not alleged that the union was so hostile that he would have been denied a fair hearing, nor that the union procedures could not afford the complete relief he sought. Finally, it does not appear exhaustion would have unreasonably delayed plaintiff's opportunity to obtain a judicial hearing. *See e.g., Battle v. Clark Equip. Co.,* 579 F.2d 1338, 1343 (7th Cir.1978).

## III. CONCLUSION

The national policy favoring private resolution of labor disputes over judicial settlement, *Walker v. Chrysler Corp.,* 601 F.Supp. 1358, 1365 (D.Del.1985) (citations omitted) requires that employees governed by a collective bargaining agreement must generally exhaust those remedies available under the agreement and through internal union appeals before initiating suit in federal court. *Id. See also Republic Steel, supra.* The court finds that plaintiff has not exhausted his remedies nor has he offered an adequate excuse for not doing so.

An appropriate Order will enter.

sort to an established internal mechanism: "Similarly, the UAW constitutional provision considered in *Clayton* required every union member 'who feels aggrieved by any action, decision, or penalty imposed upon him' by the union to exhaust union appeals procedures before seeking redress from a 'civil court or governmental agency.'" *Local Union 1075, supra* at 187 (citing *Clayton, supra,* 451 U.S. at 682–83, 101 S.Ct. at 2091–92).